986 So.2d 1018 (2008)
Nathan JORDAN and Sandra Peters, Appellants/Cross-Appellees
v.
Roscoe E. FOUNTAIN, Jr., Appellee/Cross-Appellant.
No. 2006-CA-01936-COA.
Court of Appeals of Mississippi.
January 8, 2008.
Rehearing Denied May 20, 2008.
*1019 Matthew W. O'Quain, attorney for appellants.
Michael Adelman, Hattiesburg, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Roscoe E. Fountain, (owner of Lot Five) filed a complaint against Nathan Jordan and Sandra Peters, collectively (Jordan), (owners of Lot Six) for encroachment on an area containing a building, shed, fence, wooden floor, and concrete parking space located in the Washington Heights Addition Subdivision, a commercial area, in Forrest County. The chancellor found that Jordan had only met the requirements *1020 of adverse possession as to the portion of the land where the building rests in Lot Five; however, the other improvements, namely the shed, wooden fence, concrete parking space, and wooden floor, were declared the property of Fountain. On appeal, Jordan seeks reversal of the chancellor's determination that there was no adverse possession regarding the area containing the concrete parking area, the shed, the wooden fence, and the wood floor. In the alternative, Jordan asks the Court to reverse the trial court's judgment and remand this action for further proceedings under the correct legal standard. By cross-appeal, Fountain seeks reversal of the lower court's judgment in favor of Jordan granting adverse possession of the land area containing the building and concrete slab behind the building, but seeks to uphold that portion of the judgment finding there was no adverse possession as to the concrete parking area, the shed, the wooden fence, and the wooden floor. Fountain also seeks review by cross-appeal of the lower court's failure to grant compensatory damages, attorney's fees, and expenses. Finding error, we reverse and remand.

STATEMENT OF THE CASE
¶ 2. Fountain filed a complaint against Jordan, alleging encroachment. However, Jordan claimed that the predecessor in title, Leroy Willis, had already acquired the property in Lot Five through adverse possession. The chancellor found that Jordan had only met the requirements of adverse possession as to the portion of the land where the building rests in Lot Five; however, the other improvements, namely the shed, wooden fence, concrete parking space, and wooden floor, were declared the property of Fountain. The chancellor noted that the shed did not exist on the property when Jordan acquired the property in 1998, and the wooden fence was erected and the concrete parking space was poured in 2002, less than ten years ago. The chancellor held that Jordan had not met the requirements of adverse possession as to the shed, wooden fence, concrete parking space, and wooden floor located in Lot Five. Jordan was ordered to remove from use of that property adjudicated to be the fee simple property of Fountain. Jordan appeals, asserting that the chancellor applied the wrong legal standard.
¶ 3. Jordan asserts that the determination of whether he adversely possessed the property in question should not be based on whether certain improvements have been on the land for ten years, but rather the issue should be whether his predecessor in title openly used the real property, itself, for the requisite period of time. In support of the argument, Jordan demonstrates that his predecessor in title, Willis, used the property as his own for a period of twenty-eight years, dating back to 1970. The property described as Lot Six of Block Five was transferred from R.L. Calhoun to Leroy and Juanita Willis on July 15, 1970. Leroy Willis testified that there was a one-story building, a mobile home, and a shed on the property at the time he came into possession. Jordan subsequently purchased the Lot Six property on February 9, 1998, from Leroy and Juanita Willis. The Willises testified that while they resided on the property they mowed and maintained the grass, controlled access to the property, had a driveway cut over the property, paid no rent for use of the property, and maintained a clothesline alongside the driveway on the property for some time. Based on the Willises' past use of the property and alleged adverse possession, Jordan asserts that he should be allowed to tack the Willises' period of adverse possession onto his own period of possession. Jordan also asserts in the alternative, *1021 that the Willises had successfully possessed the property for over ten years, so that when it was sold to Jordan, the property was already rightfully owned by the Willises by adverse possession. The chancellor, at trial, found that the testimony presented at the hearing was unclear regarding the past use of the property by the Willises or other predecessors in title, dating back to 1960.
¶ 4. Fountain is the owner of Lot Five, which is situated immediately adjacent to Lot Six. Fountain obtained a survey of his land, which demonstrated that the building, concrete slab, wooden floor, shed, wooden fence, and parking area encroached across Lot Six onto Lot Five. Fountain cross-appeals, seeking a finding that the chancery court erred in denying him compensation for attorney's fees, the costs of the survey, the title opinion, and the deposition expenses, totaling $4,398. Fountain also asked for an award of $300 per month, as rent for the time period Jordan used the property allegedly unlawfully. The chancellor ordered that each party pay its own attorney's fees and declined to award monetary damages. However, the chancellor provided no findings regarding the denial of Fountain's requests. At a minimum, Fountain requests a remand for a determination as to whether just compensation should be awarded to him.

STANDARD OF REVIEW
¶ 5. This Court's review of a chancellor's findings is greatly limited. Apperson v. White, 950 So.2d 1113, 1116(¶ 4) (Miss.Ct.App.2007). This Court "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Id. (citing Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 18) (Miss.2002)). Additionally, this Court will review a chancellor's findings of law under a de novo standard. Graves v. Dudley Maples, L.P., 950 So.2d 1017, 1020(¶ 14) (Miss.2007).
¶ 6. Mississippi Code Annotated section 15-1-13 (Rev.2003) sets forth the guidelines required to adversely possess land. The Mississippi Supreme Court has further established a six-part test to determine whether adverse possession has occurred. In order for possession to be considered adverse, it must be "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992). The person claiming to be in adverse possession must establish his or her claim by clear and convincing evidence and show that each element is met. Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152 (Miss.1992).
¶ 7. Finally, "[t]he standard of review regarding attorneys' fees is the abuse of discretion standard, and such awards must be supported by credible evidence." Bailey v. Estate of Kemp, 955 So.2d 777, 787(¶ 41) (Miss.2007) (quoting Miss. Power & Light Co. v. Cook, 832 So.2d 474, 486(¶ 7) (Miss.2002)).

DISCUSSION

I. WHETHER THE CHANCELLOR PROPERLY APPLIED THE ELEMENTS OF ADVERSE POSSESSION TO THE LAND AREAS IN DISPUTE
¶ 8. Mississippi Code Annotated *1022 section 15-1-13[1], the adverse possession statute, was enacted by the legislature in order to address the serious problems caused by "landowners who ignore claims or encroachments over long periods of time." Clanton v. Hathorn, 600 So.2d 963, 966 (Miss.1992). In order to successfully prove adverse possession, the claim must be: "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Rice, 611 So.2d at 871. "[P]ossession is adverse in which the holder claims, and intends to claim title, without regard to the fact that the possession and claim is held and made under an honest, but mistaken, belief that the land is within the calls of his deed." Sturdivant v. Todd, 956 So.2d 977, 982(¶ 11) (Miss.Ct. App.2007) (quoting Askew v. Reed, 910 So.2d 1241, 1244(¶ 9) (Miss.Ct.App.2005)). Once property has been acquired by adverse possession, ownership cannot be divested without a conveyance or another adverse possession for the statutory period of time required to reacquire the title. Lowi v. David, 134 Miss. 296 (1924) 98 So.2d 684, 685. Once title is transferred to an owner by adverse possession, one is no longer required to preserve structured enclosures or fences separating property. Id.
¶ 9. In the chancellor's findings, he stated that evidence at trial established that the portions of the building and concrete slab immediately behind the building were used openly, peacefully, exclusively, visibly, and continuously by Jordan and their predecessors in title for more than the requisite time period. However, the chancellor determined that there was no adverse possession of the area of land containing the shed, wooden fence, and concrete parking area on Lot 5 which were put in place in 2002 by Jordan. The chancellor found that less than ten years had passed since Jordan made these improvements, and as a result, the improvements did not meet the requirements for adverse possession.
¶ 10. From testimony and evidence present in the record, we find that Jordan has alleged a valid challenge regarding the chancellor's findings pertaining to the adverse possession of the land in question. We find the principal question with regard to these areas on Lot Five should have been whether this area had been adversely possessed for ten years by Jordan's predecessor in title, the Willises. If the Willises had already successfully met the elements of adverse possession by the time the land was transferred to Jordan, then Jordan would not be required to adversely possess the land himself for an additional ten year period, but could take the land that the Willises already possessed. However, the chancellor did not determine whether the Willises met the elements of adverse possession with regard to the area where the shed, wooden fence, and concrete parking area were located prior to the sale of the land to Jordan.
¶ 11. According to testimony gleaned from the trial record, the predecessor in title, Willis, testified that he possessed all the land in question from 1970 to 1998. Willis further testified that he maintained the land up to the light post and clothesline on Lot Five, and that he believed that the border of his land extended to the light pole and he mowed the yard past the light *1023 pole and parked his truck past the same light pole. He also testified that he controlled access to the land and further cut a driveway on a portion of the land to gain access to the trailer located on the lot. Additionally, Juanita Willis testified that she maintained a clothesline which ran beside the driveway from the trailer to right in front of the light post. Juanita Willis testified that she used the clothesline several times a week, sometimes leaving clothes on the line overnight.
¶ 12. Under the first element, there appears to be sufficient claim of ownership by the present owner Jordan and the previous owners, the Willises. Testimony given at trial by Willis and his wife Juanita established that they believed the boundary of their land to be the light post. They acted at all times while in possession as true owners would, using and maintaining all that area which is now claimed by both Jordan and Fountain.
¶ 13. Jordan, or his predecessors in title, also appears to meet the second element required under adverse possession. The claimant does appear to be actual and or hostile. "Actual possession has been defined as `effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses.'" Sturdivant, 956 So.2d at 987(¶ 32) (quoting Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992)). Here, the Willises, the predecessors in title, mowed the yard, maintained a clothes line, prepared food outdoors, and took care of the grounds as any owner would. Jordan continued this by building additional improvements on the land in these areas. The Willises' actions were sufficient to put anyone on notice that the possession was adverse to the true owner.
¶ 14. Third, the possession must be open, notorious, and visible. "[A]n adverse possessor `must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest.'" Sturdivant, 956 So.2d at 989(¶ 37) (quoting Blankinship, 605 So.2d at 820). Here, according to the record, both the Willises and Jordan used the land as would a normal landowner, maintaining the property and caring for it. They never tried to hide or conceal their use of the property.
¶ 15. Fourth, the possession must be both continuous and uninterrupted for a period of ten years. Sturdivant, 956 So.2d at 987(¶ 30). From testimony presented at trial, both Willises testified that they lived and used the property in question for well over the required ten-year period of time. While Jordan has only had possession of the land since 1998, his possession may be tacked on to the possession of his predecessors in title, who possessed the land for the requisite period of time.
¶ 16. The possession must also be exclusive. Id. In order to be in exclusive possession of land, the possessor must intend to possess the land over all other owners and to the exclusion of all others. Id. at 992(¶ 49) (citing Rawls v. Parker, 602 So.2d 1164, 1169 (Miss.1992)). Here, we find that both the Willises and Jordan intended to possess as the sole and exclusive owners at all times.
¶ 17. Finally, the adverse possession must be peaceful. Sturdivant, 956 So.2d at 987(¶ 30). Here, we find that during the majority of the time both the Willises and Jordan possessed the property, they did so unchallenged by any other party, until the present litigation. Thus, we find that all the elements of adverse possession have been met.
¶ 18. As such, from this Court's reading of the record we find that the chancellor erred in failing to determine *1024 whether evidence established that the Willises, the predecessors in title, adversely possessed those portions of Lot Five which included: the concrete parking lot, the wooden fence, the shed and the wooden floor, which were not built until 2002. From this Court's reading of the record, we find that the chancellor did not fully consider all the evidence establishing adverse possession dating back to 1970, but in his ruling instead focused on the fact that Jordan installed the wooden fence and concrete parking area in 2002, less than ten years from the date litigation commenced in 2004. The chancellor determined that these items had been installed for less than ten years and therefore failed to meet the requirements for adverse possession. However, the chancellor did not articulate why he did not determine whether the predecessors in title, the Willises, successfully adversely possessed these portions of the land, prior to Jordan's purchase of the tract. It must be noted that "[a] period of adverse possession may be tacked to that of a predecessor in title if there is privity of contract." Sturdivant, 956 So.2d at 985(¶ 23) (citing Crowder v. Neal, 100 Miss. 730, 736, 57 So. 1, 3 (1911)) (holding in part, the activities of the predecessors in title on the ... disputed property were relevant to [the plaintiff's] adverse possession claim.)
¶ 19. The record does reflect that the chancellor correctly considered all the elements of adverse possession. However, we find that the chancellor incorrectly focused on the period of time beginning when Jordan constructed a wooden fence and a concrete parking area in 2002. The chancellor did not completely consider the evidence presented by Jordan which may have established adverse possession dating back to 1970 by the Willises. As such, we reverse and remand for the chancellor's consideration of the evidence establishing adverse possession by Jordan's predecessors in title, the Willises, dating back to 1970.

II. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD FOUNTAIN ATTORNEY'S FEES AND COSTS UNDER FOUNTAIN'S CROSS-APPEAL
¶ 20. "The standard of review regarding attorneys' fees is the abuse of discretion standard, and such awards must be supported by credible evidence." Bailey v. Estate of Kemp, 955 So.2d 777, 787(¶ 41) (Miss.2007) (quoting Miss. Power & Light Co. v. Cook, 832 So.2d 474, 486(¶ 7) (Miss. 2002)). This assignment of error is without merit. We cannot find an abuse of discretion in the chancellor's decision to deny Fountain's request for attorney's fees and costs.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED AND REMANDED ON DIRECT AND CROSS-APPEAL CONSISTENT WITH THIS OPINION. NO ATTORNEYS' FEES OR MONETARY DAMAGES ARE AWARDED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] "Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title...."