LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Donald and Melanie Ainsworth were married in 1991 and had two children during their marriage. Melanie filed for divorce in August 2010. After a trial in the Stone County Chancery Court, the chancellor granted the parties an irreconcilable-differences divorce. The chancellor also divided the couple’s marital property, set visitation, and ordered Donald to pay child support. Donald filed a motion for reconsideration. After a hearing on the motion, the chancellor granted Donald relief in part and issued an amended final judgment of divorce. In her amended judgment, the chancellor revised the findings of facts and the legal analysis on the equitable division of the parties’ marital estate.
¶ 2. Donald now appeals, asserting the chancellor erred: (1) in dividing the marital estate, (2) in considering other sources of his income for child-support purposes, (3) in ordering the parties to be responsible for one-half of the children’s extracurricular activities, and (4) in awarding the tax exemptions for the children to Melanie. Pertinent facts will be discussed as they relate to each issue.
STANDARD OF REVIEW
¶ 3. We afford chancellors much discretion in our review of domestic-relations cases. Steiner v. Steiner, 788 So.2d 771, 777 (¶ 18) (Miss.2001). This Court will not disturb a chancellor’s findings unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal- standard. Mizell v. Mizell, 708 So.2d 55, 59 (¶ 13) (Miss.1998).
DISCUSSION
I. DIVISION OF MARITAL ESTATE
¶ 4. Donald contends the chancellor erred in dividing the marital estate. Donald specifically argues the chancellor inequitably divided the marital estate and mistakenly characterized her award of the marital estate to Melanie as lump-sum alimony.
¶ 5. First, we note the chancellor made comprehensive findings in classifying the parties’ assets and in dividing the marital estate, including a detailed analysis of the factors outlined in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The Ferguson factors are as follows:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family *763 relationships as measured by quality, quantity of time spent on family duties[,] and duration of the marriage; and
c. Contribution to the education, training!,] or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn!,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree!,] or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income!,] and earning capacity; and,
8. Any other factor which in equity should be considered.

Id.

¶ 6. In regard to the first factor, the chancellor concluded that both Melanie and Donald directly and indirectly contributed to the acquisition of property, including the marital home, retirement accounts, and several certificates of deposit. The chancellor found both parties earned employment income during the marriage.
¶ 7. In considering the second factor, the chancellor noted Donald began gambling in the futures market using the parties’ home computer and his credit card. Donald never realized any gains from this activity, instead amassing $150,000 in debt without Melanie’s knowledge. After Donald told Melanie about this debt, the couple sold certain property for $90,000 and sought a home-equity loan of $60,000 to pay off the debt. A few years later, Donald incurred an additional debt of $80,000. When Melanie discovered this, she refused to help Donald pay this debt. The debt was ultimately paid off by Donald’s father. Melanie further learned Donald had used much of their personal property, including his truck, the motorcycle, the tractor, and the lawnmower, as collateral. On another occasion, Donald signed Melanie’s name to a loan application at the Bank of Wiggins (the Bank), where Donald worked, using one of Melanie’s certificates of deposit containing $50,000 as collateral, After Melanie discovered this, Donald agreed to pay the remaining indebtedness on the loan of $31,000.
¶ 8. In evaluating the third factor, the chancellor found Melanie had an emotional attachment to the marital home, mainly because the couple had lived there the entirety of their marriage and raised their daughters there. The chancellor also found Melanie had an emotional attachment to her three certificates of deposit since the money used to fund them was originally given to her by her father.
¶ 9. In analyzing the fourth factor, the chancellor valued Melanie’s separate estate at $42,500. This included her half-interest in several rental homes she co-owned with her father. Donald’s separate estate was valued at $155,169.22. This included the value of Donald’s profit-sharing and pen *764 sion plans through his employer, the Bank, for the ten years he worked there prior to the parties’ marriage. Donald contends the chancellor was under the mistaken impression that she should “equalize” the parties’ separate estates. In the original judgment, the chancellor valued the parties’ separate estates, noted the disparity between the two, and awarded Melanie an amount of the marital assets to “equalize the two estates.” But after the hearing on the motion for reconsideration, the chancellor issued an amended judgment in which this language was removed, and the award of marital assets to Melanie was recalculated.
¶ 10. The chancellor found there was no evidence presented on the fifth factor.
¶ 11. The chancellor discussed the sixth and seventh factors together. The chancellor determined Melanie’s adjusted gross monthly income to be $3,559, which included her employment income as a teacher and rental income. Donald’s adjusted gross monthly income was $4,562, which included his employment income as a vice president at the Bank, his yearly bonus from the Bank, and profits from vehicle sales. Reiterating that Donald’s income was greater than Melanie’s and his separate nonmarital estate exceeded Melanie’s by $112,662, the chancellor awarded the marital home to Melanie. The chancellor also awarded Melanie the equity in the certificates of deposit. Donald argues the chancellor mischaracterized this as lump-sum alimony. However, the chancellor clearly states she divided the assets in such a way as to avoid the need for alimony.
¶ 12. The chancellor determined the marital estate was valued at $462,418. Much of the estate’s value was from Don-aid’s profit-sharing and pension plans. Melanie was awarded 62.33% of the marital estate, while Donald was awarded 37.67% of the marital estate. The chancellor determined Melanie’s share was $288,222, but also assigned her marital debts of $97,500, leaving Melanie with a total equity of $190,722. Melanie’s share included: the marital home; several certificates of deposit; one-half equity in another certificate of deposit valued at $9,500; an Ameritrade account valued at $6,000; $5,600 in an IRA; her PERS retirement valued at $9,000; one-half of the marital portion of Donald’s profit-sharing plan; one-half of the marital portion of Donald’s pension plan; and her truck, including any indebtedness. Melanie’s debts included the remaining mortgage on the marital home of $75,000, which did not include the home-equity loan of $60,000; $7,000 owed on her truck; and $15,500, representing one-half of a loan taken against a certificate of deposit.[1]
¶ 13. The chancellor determined Donald’s share was $174,190, but assigned him marital debts of $75,500, leaving Donald with a total equity of $98,690. Donald’s share included: all vehicles in his possession, including any indebtedness; one-half equity in a certificate of deposit valued at $9,500; one-half of the marital portion of his profit-sharing plan; one-half of the marital portion of his pension plan; and an interest in real estate valued at $10,500. Donald’s debts included the home equity loan of $60,000 used to pay off Donald’s debts and $15,500, representing one-half of a loan taken against a certificate of deposit.
¶ 14. In dividing the estate, the chancellor considered the following: Donald’s *765 dissipation of the marital estate; Donald’s behavior in hiding his debts from Melanie; Donald’s decision to quit earning extra income to pay off his debts; Donald’s failure to follow the order requiring him to report his vehicle sales and place the profits in the court registry; Donald’s failure to disclose the retirement benefits from his profit-sharing and pension plans, which was only completed after issuing a subpoena duces tecum; the financial disparity between the parties’ incomes and separate estates; and Melanie’s assignment of a greater share of the marital debt.
¶ 15. Here, the chancellor thoroughly analyzed the Ferguson factors, and her findings were not manifestly wrong or clearly erroneous. The chancellor equitably divided the marital estate. Thus, we find no merit to this issue.
II. INCOME FOR DETERMINING CHILD SUPPORT
¶ 16. Donald argues the chancellor erred in determining his income for child support. Donald claims his yearly bonus and income from vehicle sale are not regular income for purposes of calculating child support. We first note Donald failed to raise the issue of his yearly bonus in his motion for reconsideration. It is well settled that an issue raised for the first time on appeal is barred from our review. See Ory v. Ory, 936 So.2d 405, 409 (¶ 9) (Miss.Ct.App.2006). Thus, we will only review Donald’s argument concerning income from vehicle sales.
¶ 17. The chancellor calculated Donald’s adjusted gross monthly income to be $4,562, which consisted of his salary, his bonus, and profits from vehicle sales. Following the statutory guidelines in Mississippi Code Annotated section 43-19-101(1) (Supp.2013), the chancellor ordered Donald to pay $912.40, or twenty percent of $4,562, per month in child support. The chancellor noted that Donald admittedly failed to report income from any vehicle sales on his Rule 8.05 financial statement.[2] The chancellor also noted Donald had failed to comply with her temporary order of December 2, 2010, which required Donald to.report the sales of any vehicles to Melanie and to deposit the money from the sale of these vehicles into the registry of the court. During trial, Donald admitted that he made a small profit[3] from vehicle sales but purposefully did not report the sales of these vehicles, either to the chancery court or to the state or federal government for income-tax purposes. Donald also claimed he had no documentation by way of receipts or invoices for the sale of these vehicles. Donald testified he intended to continue selling vehicles and anticipated similar profits.
¶ 18. With respect to the chancellor’s finding, this Court cannot find the decision to include Donald’s profits from vehicle sales in her calculation of child support to be clearly erroneous. “The chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is the sole authority for determining the credibility of the witnesses.” Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). Accordingly, we find this issue to be without merit.
III. EXTRACURRICULAR ACTIVITIES
¶ 19. Donald contends the chancellor erred in ordering him to be responsible for one-half of the children’s extracurricu *766 lar activities. But Donald failed to raise this issue in his motion for reconsideration. So we decline to review this issue on appeal. See Ory, 936 So.2d at 409 (¶ 9).
IV. TAX EXEMPTIONS
¶ 20. Donald contends the chancellor erred in awarding the tax exemptions for the children to Melanie. Donald also failed to raise this issue in his motion for reconsideration. We decline to review this issue as well. See id.
¶ 21. THE JUDGMENT OF THE STONE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. As previously stated, Donald used this certificate of deposit as collateral for a loan in order to pay off his debts.

. UCCR 8.05.

. Donald testified his total profit on vehicle sales from the date of the temporary order until trial was $8,830. The first day of trial was July 20, 2011.