# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00882-COA

| | |
|---|---|
| **110 SOUTH STREET, LLC** | APPELLANT/CROSS-APPELLEE |

v.

| | |
|---|---|
| **ATRIUM GENTLEMANS CLUB, INC.** | APPELLEE/CROSS-APPELLANT |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/09/2015 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JEFFREY DALE RAWLINGS<br>JON JERDONE MIMS |
| ATTORNEY FOR APPELLEE: | MEL J. BREEDEN JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | AWARDED APPELLANT $9,800 IN BACK RENT AND A LIEN AGAINST APPELLEE'S PERSONAL PROPERTY LOCATED AT 110 SOUTH STREET |
| DISPOSITION: | AFFIRMED - 02/21/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CARLTON, J., FOR THE COURT:

¶1.     110 South Street LLC filed a complaint in the Hinds County Chancery Court seeking damages against Atrium Gentleman's Club Inc. (Atrium) after Atrium failed to make lease payments.  After a hearing on the matter, the chancellor entered an order finding that Atrium owed 110 South Street $9,800 in back rent.  The chancellor's order reflected that the parties orally agreed that Atrium would rent the property at a rate of $3,500 per month and would

take possession of the property on April 1, 2014. The chancellor found that no enforceable written lease agreement existed between the parties since "no such document was ever signed by both parties." The chancellor also held that each party would be responsible for its own attorney fees.

¶2. Atrium filed a motion for reconsideration, which the chancellor denied. 110 South Street now appeals the chancellor's order and argues that the chancellor erred by failing to award attorney fees and additional damages. Atrium cross-appeals, asserting that the chancellor erred in: (1) finding that the rental period commenced on April 1, 2014; (2) granting a lien on Atrium's personal property; and (3) failing to order that 110 South Street return Atrium's property. Finding no error, we affirm the chancellor's order and judgment.

**FACTS**

¶3. In March 2014, Ray Mallard, an agent for Atrium, contacted 110 South Street to inquire about securing a lease agreement for the property. After negotiations, the parties agreed that Atrium would pay $3,500 per month to lease the property, and Atrium would take possession of the property on April 1, 2014. However, the record reflects that Atrium never signed or executed the proposed lease agreement.[1] Both Atrium and 110 South Street testified that the parties agreed that Atrium could occupy the property for forty-five days rent-free while Atrium made some needed renovations to the property. The parties also both testified that they agreed to extend this rent-free period for an additional forty-five days due

---

[1] Atrium asserts, and testimony reflects, that it never signed the lease since the terms failed to comply with the agreement of the parties. The record reflects that neither Atrium nor 110 South Street signed the lease agreement.

2

to renovation delays, totaling ninety days in all.

¶4.    On August 21, 2014, after Atrium failed to make lease payments, 110 South Street filed a complaint for a temporary restraining order (TRO), an injunction, and other relief against Atrium, seeking damages, all sums due, injunctive relief, and attorney fees based on the following:  110 South Street's statutory landlord's lien; Atrium's failure to pay past-due rent, expenses, and costs; Atrium's failure to provide proof of insurance; Atrium's failure to transfer utilities; and Atrium's failure to execute a written lease agreement.

¶5.    On August 27, 2014, the chancellor entered a TRO enjoining and prohibiting Atrium from removing any property from the premises and from entering and accessing the premises. The hearing for the preliminary injunction was set for September 8, 2014.  When Atrium failed to respond and attend the hearing, the chancellor entered a permanent injunction on October 3, 2014.  On the same day, Atrium and 110 South Street executed a forbearance agreement that allowed Atrium to remain open briefly in exchange for Atrium's agreement that it would have no defenses to the prior action filed against it by 110 South Street.

¶6.    On October 15, 2014, the chancellor entered an entry of default against Atrium. Atrium filed its answer and motion to set aside the entry of default and permanent injunction on October 16, 2014.  The chancellor entered an order on February 18, 2015, finding that the only remaining issues to be determined were:  (1) the amount, if any, due to 110 South Street, (2) the items, if any, to which the landlord's lien attached, and (3) the items, if any, to which Atrium was entitled.

¶7.    The chancellor held an evidentiary hearing on these issues on March 18, 2015.  At the

hearing, 110 South Street asserted that Atrium owed it approximately $18,000, which included $3,000 in attorney fees. 110 South Street based this amount on unpaid rent and Atrium's failure to cover costs to improve the building, which included contracted electrical and roofing work, and installation of the sprinkler system. 110 South Street submitted that it also incurred expenses for the electric bills and $3,000 in losses for a metal-clad fireproof door that was removed from the building. 110 South Street also requested its security deposit for damages, and all of its damages for rent for April, May, June, July, August, and September, in addition to a lien on certain personal property.

¶8. However, at the hearing, 110 South Street testified that although Atrium was scheduled to take possession of the property on April 1, 2014, 110 South Street agreed to provide a ninety-day rent-free period to Atrium due to renovations being made to the property. 110 South Street agreed that it was not entitled to receive rent from Atrium until June 15, 2014.

¶9. 110 South Street also asserted that when it obtained possession of the property through the injunctive action, the contents in the premises consisted of furniture, kitchen equipment, bar equipment, sound and light equipment, stages, stripper poles, and televisions. The stages were permanently mounted to the concrete floors. 110 South Street sought to establish its lien against the personal property, primarily against the kitchen equipment, explaining that none of the personal property other than the kitchen equipment had any real value to 110 South Street.

¶10. At the hearing, Atrium also acknowledged that the parties agreed that Atrium could

4

occupy the property starting on April 1, 2014, but Atrium testified that the parties agreed that Atrium would not pay rent for a forty-five-day period so that it could make the renovations needed for its business. At the end of the initial forty-five-day period, Atrium stated that renovations were still ongoing; as a result, Atrium testified that the parties agreed to extend the rent-free period for an additional forty-five days. Atrium testified that this rent-free period ended on June 15, 2014, when the gentleman's club opened for business.

¶11. Atrium further testified that prior to opening for business, 110 South Street requested Specialty Electric to perform some work on the building. Atrium claimed that it never received a bill from 110 South Street for any work performed by Specialty Electric, and Atrium stated that it was never presented a bill for a fire inspection. Atrium also testified that leaks in the roof were corrected without an agreement between the parties as to who would pay for these repairs. Atrium submitted that it paid the Entergy electric bills during the renovations to the building, even though the electricity account remained in 110 South Street's name. Regarding 110 South Street's claim about the metal-clad fireproof door, Atrium testified that 110 South Street ordered that the door be placed outside of the premises, where it later disappeared.

¶12. Both parties testified and agreed that Atrium had indeed paid 110 South Street a total of $14,700. However, despite its prior testimony that the rent-free period ended on June 15, 2014, 110 South Street still claimed that Atrium owed them "[f]or April, May, June, July, August, [and] September, [and for] the $3,000 missing door that [Atrium] couldn't tell [them] why [they] couldn't put back in place." 110 South Street also disputed that Atrium

5

should receive dollar-for-dollar credit on the $3,500 security deposit.

¶13.   The chancellor entered his opinion and order on April 9, 2015, awarding a judgment against Atrium, and in favor of 110 South Street, in the amount of $9,800 in back rent. The chancellor found that the parties agreed that Atrium would rent the property from 110 South Street at a rate "of $3,500 per month from April 1, 2014, until the date upon which Atrium was removed from the premises, being October 3, 2014, for a total of $24,500." The chancellor acknowledged that Atrium had paid a total of $14,700 to 110 South Street in rent, and held Atrium liable for remaining unpaid rent in the amount of $9,800. The chancellor ordered Atrium to pay this amount within twenty days.

¶14.   The chancellor found that although Atrium took possession of the property on April 1, 2014, Atrium failed to sign the lease agreement. As a result, the chancellor found that no enforceable lease agreement existed between the parties. The chancellor granted 110 South Street a lien against Atrium's personal property, but the chancellor explained that the lien would be extinguished, and Atrium could recover all personal property from the location listed on "exhibit B," if Atrium paid the monetary judgment in full within twenty days. The chancellor also held that any property considered a fixture would not be recoverable by Atrium, and that each party would be responsible for its own attorney fees.

¶15.   On April 17, 2015, Atrium filed a motion for a new trial, reconsideration, or to set aside the judgment. On May 13, 2015, the chancellor entered an order denying Atrium's motion. 110 South Street filed its appeal on June 5, 2015, and Atrium subsequently filed its

cross-appeal.[2]

¶16.    This Court employs a limited standard of review when reviewing a chancellor's

decisions. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000).    This Court

"review[s] a chancellor's decision for abuse of discretion[,] . . . [and we] will affirm a

chancellor's decision when it is supported by substantial credible evidence." *Venture Sales*

*LLC v. Perkins*, 86 So. 3d 910, 913 (¶11) (Miss. 2012) (citations omitted).  We only disturb

the chancellor's findings if "they are manifestly wrong or clearly erroneous, or the chancellor

applied an erroneous legal standard." *Ainsworth v. Ainsworth*, 139 So. 3d 761, 762 (¶3)

(Miss. Ct. App. 2014).  However, we review a chancellor's conclusions of law de novo.

*Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

## DISCUSSION

### I.    Appeal by 110 South Street

¶17.    The chancellor ordered each party to be responsible for its own attorney fees, and like

Judge Wilson's separate opinion, we find no abuse of discretion by the chancellor in denying

110 South Street's request for attorney fees herein. *See Jordan v. Fountain*, 986 So. 2d 1018,

1021 (¶7) (Miss. Ct. App. 2008).  110 South Street argues that the chancellor erred in failing

to award it damages and attorney fees.  110 South Street submits that the chancellor limited

110 South Street's damages to the total amount of rent owed by Atrium subtracted by the

---

[2] The record reflects that on June 3, 2015, Atrium filed a motion for relief from judgment and for reconsideration of its previous motion for a new trial, for reconsideration, or to set aside of the judgment.  No order or judgment responding to this motion appears in the record before us.

amount already paid by Atrium, amounting to a total of $9,800. 110 South Street argues that based on the forbearance agreement and the presentation at the hearing of the damages incurred by 110 South Street, the chancellor should have awarded 110 South Street actual damages in the amount of $18,512.33, which includes attorney fees of approximately $2,500.

¶18. The record reflects that on October 3, 2014, Atrium executed the forbearance agreement wherein Atrium agreed that "it has no defenses to the action filed against it by 110 South Street, LLC," in exchange for 110 South Street allowing a forbearance of the permanent injunction. 110 South Street argues that the chancellor erred in failing to award it damages and attorney fees because, as a matter of contract, Atrium agreed by execution of the forbearance agreement that it possessed no defenses to 110 South Street's complaint. As a result, 110 South Street argues that Atrium was contractually estopped from defending against its liability as to 110 South Street's request for damages and attorney fees, and estopped from arguing that the terms of the lease agreement were not enforceable based on the fact that the lease was never signed and executed.

¶19. Upon review, the record reflects that the forbearance agreement provides, in pertinent part, that:

> 110 South Street, LLC has agreed to forbear from enforcing the Permanent Injunction until October 4, 2014[,] at 5:00 a.m. under certain terms and conditions. In consideration for this agreement, Atrium . . . has agreed to the following terms and conditions.
>
> Atrium . . . agrees that it has no defenses to the action filed against it by 110 South Street . . . and agrees that the Permanent Injunction is valid and enforceable in all respects and that 110 South Street . . . is entitled to immediate possession of the subject premises.

8

However, the forbearance agreement failed to provide for an award of attorney fees or an award for any special damages. "[A]ttorney[] fees are a special remedy available only when expressly provided for in either a statute or contract, or when there is sufficient proof to award punitive damages." *Falkner v. Stubbs*, 121 So. 3d 899, 903 (¶15) (Miss. 2013). A forbearance agreement constitutes a collateral agreement that must be independently binding in its terms. *See generally Sunburst Bank v. Keith*, 648 So. 2d 1147, 1151 (Miss. 1995); *Graham v. Pepple*, 132 Miss. 612, 612, 97 So. 180, 184 (1923).

¶20. At the hearing, Patrick Pigott, the owner of 110 South Street, identified an expense sheet for 110 South Street, which was admitted into evidence.[3] Pigott testified that the expense sheet reflected that Atrium owed 110 South Street $15,987.33. Counsel for 110 South Street asked Pigott how he arrived at that sum, and Pigott explained:

> Well, the contracted work that they agreed to pay for initially to improve the building, we just—I hired my electrician, my roofer and my fire sprinkler guy to do the work that they needed done to the building that they agreed to pay for. That's three of the amounts here. There's a total of five. And then we paid—they didn't pay the power bill; we paid the power bill. It was in our name for a while. And then there's unpaid rent, late fees on the unpaid rent, attorney[] fees and court costs, which here is not accurate. One charge is for a metal-clad fireproof door that was in the building, that was removed from the building.

¶21. Pigott also testified that he applied Atrium's $3,500 security deposit "toward the three months' worth of rent that they got for free during the construction period." When asked the total outstanding balance owed by Atrium at the time of the hearing, Pigott responded that Atrium owed $18,512.33, which included an additional sum of between $2,500 and $3,000

---

[3] This expense report does not appear in the record before us.

for attorney fees. Counsel for 110 South Street admitted that Atrium paid 110 South Street a total of $14,700, although Atrium paid this amount after 110 South Street filed the lawsuit.

¶22. The record reflects that Deetra Jones Eiland, owner of Atrium, testified concerning the lack of an agreement between the parties to the terms of the proposed lease, the agreements, or the lack thereof, as to the work and repairs to be done to the building, as well as the disagreement regarding the payment of the electricity bill and rent.

¶23. The transcript, especially Pigott's testimony, and record before us, reflect that the $18,512.33 in damages and attorney fees requested by 110 South Street includes unpaid rent. The record also reflects that both parties agreed that Atrium paid a total of $14,700 to 110 South Street in unpaid rent. Since the expense sheet does not appear in the record before us, we cannot determine the total amount in damages, minus the unpaid rent, 110 South Street seeks on appeal.

¶24. However, upon our review, we recognize that "[t]he question that we must answer when reviewing a chancellor's damage award is not merely whether we would have awarded more or less damages; rather, our inquiry on appeal is whether there is substantial evidence to support the chancellor's findings." *Indus. & Mech. Contractors of Memphis Inc. v. Tim Mote Plumbing LLC*, 962 So. 2d 632, 636 (¶10) (Miss. Ct. App. 2007) (citing *Edge v. City of Booneville*, 226 Miss. 108, 109, 83 So. 2d 801, 802 (1955)). Our supreme court has held that "[i]n the context of a damages assessment, which is a finding of fact, the appellate court must review the damages award by looking to the facts of each case." *Lane v. Lampkin*, 175 So. 3d 1222, 1227 (¶7) (Miss. 2015) (internal quotation marks omitted). As stated

10

previously, this Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or applied an erroneous legal standard." *Id.* at (¶6).

¶25. Our review of the record reflects that the chancellor herein found that the lease agreement was not executed, and as a result, no enforceable written lease agreement existed between the parties. Based on the testimony presented at the hearing, the chancellor did find that "the parties agreed that Atrium would rent the subject property from 110 [South Street] at a rate of $3,500 per month with Atrium taking possession of the property effective April 1, 2014." The chancellor calculated the rent owed to 110 South Street from April 1, 2014, until October 3, 2014, which totaled $24,500. The chancellor subtracted Atrium's rent payment to 110 South Street of $14,700, and found that Atrium still owed 110 South Street $9,800. The chancellor also granted 110 South Street a lien on Atrium's personal property currently left on the property, explaining that the lien would be extinguished, and Atrium could recover all personal property from the location listed on "exhibit B," except for the fixtures, if Atrium paid the monetary judgment in full within twenty days.

¶26. The chancellor also ordered that each party would be responsible for its own attorney fees. We recognize that "the standard of review regarding attorney[] fees is the abuse of discretion standard." *Jordan v. Fountain*, 986 So. 2d 1018, 1021 (¶7) (Miss. Ct. App. 2008). The Mississippi Supreme Court has found no basis for an award of attorney fees for breach of an oral agreement. *Falkner*, 121 So. 3d at 903 (¶¶12, 15). As stated, "attorney[] fees are

11

a special remedy available only when expressly provided for in either a statute or contract, or when there is sufficient proof to award punitive damages." *Id.*;[4] *see also Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (¶40) (Miss. 2002). After our review of the record and the applicable caselaw, and in keeping in mind our standard of review, we cannot say that the chancellor erred in his award of unpaid rent and denial of other damages and attorney fees. *Venture Sales*, 86 So. 3d at 913 (¶11) (We will affirm a chancellor's decision where he did not abuse his discretion and where the decision is supported by substantial credible evidence.).

¶27. 110 South Street further claims that since the chancellor only awarded 110 South Street unpaid rent, and not damages, then the calculation of rent should have been doubled based on the statutory calculation of double rent for damages caused by a holdover tenant pursuant to Mississippi Code Annotated section 89-7-25 (Rev. 2011), which provides:

> When a tenant, being lawfully notified by his landlord, shall fail or refuse to quit the demised premises and deliver up the same as required by the notice, or when a tenant shall give notice of his intention to quit the premises at a time specified, and shall not deliver up the premises at the time appointed, he shall, in either case, thenceforward pay to the landlord double the rent which he should otherwise have paid, to be levied, sued for, and recovered as the single rent before the giving of notice could be; and double rent shall continue to be paid during all the time the tenant shall so continue in possession.

¶28. However, the record reflects that 110 South Street failed to request double rent at the hearing; the first mention of double rent is in 110 South Street's notice of appeal. We "cannot review an issue on appeal if the parties failed to present the issue to the chancellor

---

[4] "Regarding issues of fact as to which a chancellor did not make specific findings, this Court is required to assume that the chancellor resolved all such factual issues in the appellee's favor." *Sunburst Bank*, 648 So. 2d at 1149.

at trial." *Lee v. Lee*, 154 So. 3d 904, 909 (¶23) (Miss. Ct. App. 2014).

## II.  Cross-Appeal by Atrium

¶29.   Atrium filed its cross-appeal, arguing that the chancellor erred in finding that the rental period for the property commenced on April 1, 2014.  Contrary to Judge Wilson's separate opinion, we find the application of the standard of review controlling as to this issue based upon the record herein.  Atrium submits that the testimony provided by both parties at the hearing reflects that both parties agreed to a ninety-day rent-free period commencing on April 1, 2014, and ending on June 15, 2014.

¶30.   Pigott, the owner of 110 South Street, testified about the commencement of the rental period for the building:

> Q.  You say that you gave them a free 45-day window to make improvements. What happened there?
>
> A.  Well, that got extended out to 90 days eventually because they weren't ready to go, and I agreed to it.
>
> Q.  So they were 45 days late on the window?
>
> A.  That is correct.
>
> Q.  Do you recall when they officially opened?
>
> A.  I believe it was supposed to start around June 15th, so I think they were a little bit late actually opening the doors. Maybe a week or two after that.
>
> Q.  So from April 1st through June 15th, they had possession of the premises?
>
> A.  Yes.
>
> Q.  But no operating business?

A.      That's right.

¶31.    Atrium also testified regarding the ninety-day rent-free period agreed to by 110 South Street due to Atrium's need for renovations made to the building, and also due to the delay in the completion of those renovations. Atrium testified that it finally opened for business on June 15, 2014.

¶32.    On cross-examination, Pigott admitted that 110 South Street sought payment for unpaid rent beginning June 15, 2014:

Q.      On the exhibit that's been marked and entered into evidence here, that was prepared by your attorney there, how long were you collecting rent for on there or that you're claiming rent for?

A.      June through October.

Q.      So that's June 1 through October 31st?

A.      I suppose.

Q.      So you're not entitled to rent except from June 15 to October 3; is that correct?

A.      No. I think that's actually not the 1st. It would be the 15th, June 15th through October 15th.

¶33.    At the conclusion of the hearing, counsel for 110 South Street informed the chancellor:

[Atrium] took possession April 1. They had 45 days of free rent. They went another 45 days past that. If you apply the security deposit, which apparently was just paid out of the blue, to that extra 45 days, they still come out ahead. Subtract that. You're talking about June, July, August, September, four months, so you're over—you're almost to $15,000 right there. And then the period of time they used in October, they had several, at least two weekends that I know of they had access to. So before you get to anything else, we're at,

14

at least, a five or six thousand dollar loss minimum, and the kitchen equipment that they want to keep compensates us for that, and that cuts out all the disputes.

¶34.   Once both parties rested, the following exchange occurred between the chancellor and counsel for Atrium during closing arguments:

> Q.   Well, I've got it at $17,500.  That's May, June, July, August and September.
>
> A.   I believe the testimony, Your Honor, was that the rent did not start until June the 15th.
>
> Q.   Okay.  Well, maybe that's right.

Later, the chancellor and counsel for Atrium again discussed the date Atrium's rent payments commenced:

> Q.   I'm going to find that [Atrium] should have probably paid for April and May, too.
>
> A.   It was my understanding from the testimony of [110 South Street] here today that it would all start June 15th, Your Honor.
>
> Q.   Well, do you want the lease agreement or do you want what they agreed to?
>
> A.   Well, I mean, it's his testimony he agreed to June 15th.
>
> Q.   Okay.  I don't remember that.

¶35.   As acknowledged, when reviewing the decision of the chancellor, this Court employs the following limited standard of review:  we will only disturb a chancellor's findings if they are manifestly wrong or clearly erroneous, or if the chancellor applied an incorrect legal standard.  *McNeil*, 753 So. 2d at 1063 (¶21); *Ainsworth*, 139 So. 3d at 762 (¶3).  "[We] will affirm a chancellor's decision when it is supported by substantial credible evidence."

15

*Venture Sales*, 86 So. 3d at 913 (¶11). After our review, we find that the chancellor examined the record before him, including the testimony and arguments of the parties, and he was within his discretion to find Atrium liable to 110 South Street for rent payments beginning on April 1, 2014, the date Atrium took possession of the property. In applying this deferential standard of review to the record before us, we must affirm the chancellor's award of unpaid rent since the chancellor's findings were based upon substantial credible evidence. *See id.*

¶36. Atrium also argues that it does not owe 110 South Street for rent payments prior to June 15, 2014, or damages, and as a result, the chancellor erred in granting 110 South Street a lien on Atrium's personal property. Since we affirm the chancellor's determination that Atrium does owe 110 South Street for rent payments beginning April 1, 2014, and that no enforceable written agreement existed between the parties, this issue is then moot. We also find no abuse of discretion by the chancellor in awarding 110 South Street a lien on Atrium's personal property unless Atrium pays the award of $9,800 within twenty days of the judgment.[5]

¶37. **THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., ISHEE AND GREENLEE, JJ., CONCUR. IRVING, P.J., AND WESTBROOKS, J., CONCUR IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN PART AND DISSENTS IN PART**

---

[5] *Venture Sales*, 86 So. 3d at 913 (¶11); *see also Pittman v. Pittman*, 652 So. 2d 1105, 1110 (Miss. 1995).

**WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR, J. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶38.   I concur in part and dissent in part.  I agree with the majority that the chancellor did not err by not awarding 110 South Street attorneys' fees or additional damages.  Atrium does appear to have agreed that it "ha[d] no defenses to the action filed against it by 110 South Street"; however, I concur with the majority that in waiving "defenses to the action," Atrium did not admit that it was liable for attorneys' fees or additional damages.  The parties subsequently agreed that "the amount, if any, due to 110 South Street" was to be determined at the evidentiary hearing in the chancery court.  This was reflected in an agreed order setting the hearing and confirmed at the outset of the hearing.  The forbearance agreement was entered into evidence at the hearing; however, 110 South Street did not argue at the hearing that the forbearance agreement was an admission of liability for attorneys' fees or specific damages.  On the record before us, I agree that the chancellor did not err by declining to read the agreement so broadly.  Furthermore, there was no other basis for an award of attorneys' fees, and the chancellor did not clearly err by (impliedly) finding that Atrium failed to prove the additional damages it sought.  Accordingly, I concur in the result reached by the majority with respect to the issues raised in 110 South Street's appeal.

¶39.   I dissent with respect to Atrium's cross-appeal.  I agree with the chancellor that the unsigned draft lease agreement is irrelevant, as the record supports the chancellor's finding that no enforceable written lease existed.  At the hearing in the chancery court, 110 South Street, through Pigott, admitted that the parties orally agreed that Atrium's obligation to pay

17

rent would not commence until June 15, 2014:

> Q. But y'all ultimately agreed that possession would take place on June 15th and the rent would start on that date?
>
> A. That's correct.
>
> Q. On the exhibit that's been marked and entered into evidence here, that was prepared by your attorney there, how long were you collecting rent for on there or that you're claiming rent for?
>
> A. June through October.
>
> Q. So that's June 1 through October 31st?
>
> A. I suppose.
>
> Q. So you're not entitled to rent except from June 15 to October 3; is that correct?
>
> A. No. I think that's actually not the 1st. It would be the 15th, June 15th through October 15th.

¶40. Given Pigott's admissions, the chancellor erred by finding that Atrium was liable for seven months of rent beginning on April 1, 2014. The record simply does not support a finding that Atrium is liable for more than four months of rent (June 15 to October 15), i.e., $14,000. The chancellor found, and the parties do not dispute, that Atrium had already paid 110 South Street $14,700, for which the chancellor gave Atrium credit. Accordingly, Atrium has paid 110 South Street an amount greater than it orally agreed to pay in rent.

¶41. 110 South Street seems to argue that Atrium is somehow trying to have its cake and eat it too by denying that the unsigned draft lease agreement is enforceable while also insisting that its obligation to pay rent did not commence until June 15. However, Atrium's position that its obligation to pay rent did not begin until June 15 is not based on any

18

provision of the unsigned agreement. The unsigned agreement called for a sixty-day "construction period" at the outset of the lease, but it did not expressly provide for a rent abatement during that period.[6] In any event, such an abatement period would have differed from the parties' oral agreement. Pigott testified that the parties' initial oral agreement was that no rent would be due for forty-five days, which he later agreed to extend to ninety days, and they ultimately agreed that rent would commence on June 15. Thus, Atrium's position that its obligation to pay rent did not begin until June 15 is not based on the proposed lease agreement that it rejected and refused to sign. Rather, Atrium relies on an undisputed oral agreement to that effect.

¶42.   In summary, the record does not support a finding that Atrium owes more in rent than the undisputed amount it has already paid to 110 South Street. Therefore, in Atrium's cross-appeal, I would reverse and render the award of damages, as well as the lien granted against Atrium's personal property. Therefore, I respectfully concur in part and dissent in part.

**FAIR, J., JOINS THIS OPINION.**

**BARNES, J., DISSENTING:**

¶43.   In its original complaint, 110 South Street demanded a judgment against Atrium "for all damages, all sums due *and all attorney*[*'s*] *fees incurred*[.]" (Emphasis added). When Atrium signed the October 3, 2014 forbearance agreement, in which it agreed that it had "no defenses to the action filed against it," Atrium waived any defense to a claim for attorney's

---

[6] In fact, another section of the unsigned agreement suggested the opposite. The unsigned agreement stated that if 110 South Street failed to deliver vacant possession of the property on April 1, 2014, rent would abate only until possession was delivered to Atrium.

fees. "Parties are free to waive various rights . . . . In contracts[,] parties understand that liability to the burden is a necessary incident to the right to the benefit." *RL Regi N.C. LLC v. Lighthouse Cove LLC*, 762 S.E.2d 188, 190 (N.C. 2014); *see also Knight Props. v. State Bank & Tr. Co.*, 77 So. 3d 491, 496-97 (¶¶27-28) (Miss. Ct. App. 2011) (finding contractual language enforceable to waive certain defenses). As 110 South Street asserts, Atrium received the benefit of the forbearance period in exchange for waiving "its defenses to liability for damages and attorney['s] fees incurred by 110 South Street." Accordingly, I dissent from the majority's decision to affirm the chancery court's judgment.

¶44. Before the chancery court, Atrium argued that Ray Mallard, who had signed the forbearance agreement on Atrium's behalf, was not "duly authorized by the LLC to execute the agreement,"[7] and Atrium's owner, Deetra Eiland, stated that she never agreed to pay 110 South Street's attorney's fees. Counsel for Atrium further contended there was no separate written agreement for attorney's fees. However, Atrium subsequently attached a copy of the signed forbearance agreement to its motion for reconsideration, acknowledging that the parties had "entered into an agreement that [Atrium] could occupy the premises until 5:00 a.m. on October 4, 2014 and not after[.]"

¶45. Finding that Atrium's agreement not to defend the claims raised in the complaint waived its defense as to liability for attorney's fees, I would reverse and remand for a determination of the appropriate attorney's fees.

---

[7] However, Deetra Eiland, the club's owner, testified that Mallard was her business associate.