CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 29. I agree with the majority's finding that Ing adequately exercised his option to purchase the property pursuant to the terms of the lease agreement. However, I find no error in the circuit court's award to Adams of past-due rent payments owed by Ing for the period when the written lease agreement was expired. Our applicable standard of review requires that we affirm the findings of fact by the trial court if supported by substantial evidence.
 
 Falkner v. Stubbs
 
 ,
 
 121 So.3d 899
 
 , 902 (¶ 8) (Miss. 2013). I would therefore affirm the circuit court's judgment in part, and reverse and remand in part.
 

 ¶ 30. On January 26, 2010, Ing and Adams entered into a five-year lease agreement. The terms of the agreement provided that Ing would rent the basement and parking lot of the three-story building located at 110 Van Dorn Avenue, Holly Springs, Mississippi, from Adams at a rate of $2,500 per month for five years. The lease agreement also included the following language: "At the end of this current five[-]year lease, provided that [Ing] is current upon all conditions of this lease, he has the option to extend the lease for an additional five years or to purchase the building
 
 [
 

 7
 

 ]
 
 [for] it's [sic] then appraised value." The lease contained no provision allowing Ing to remain in the property rent free after expiration of the lease.
 

 ¶ 31. On January 22, 2015, four days prior to the expiration of the lease agreement, Ing hand-delivered a letter to Adams stating that he intended to exercise his right to purchase the property. In his letter, Ing stated that "[t]he purchase price shall be at appraised value as agreed." According to Ing, when Adams realized that he intended to purchase the property, Adams told him "no," and refused to sell the property.
 

 ¶ 32. On January 26, 2015, the day the lease agreement expired, Ing received a letter from Adam's attorney alleging that Ing had committed several violations of the terms of the lease agreement. The letter further stated that Adams "[did] not desire to sell the building" to Ing but offered to lease the premises to Ing on a month-to-month basis.
 

 ¶ 33. Ing testified that after receiving Adams's letter stating that he would not be able to purchase the property, he withheld rent payments but maintained his presence in the property. At the time of trial, Ing testified that as a result of Adams's refusal to sell, he had not made rent payments to her in sixteen months.
 

 ¶ 34. Adams filed a complaint on March 19, 2015, claiming Ing was in breach of the lease agreement and a holdover tenant, according to the terms of the lease agreement. Adams specifically alleged that Ing violated the terms of the lease agreement by failing to tender the agreed portion of the ad valorem tax liability, failing to comply with the city's ordinance regarding commercial add-ons, and failing to maintain liability insurance. Adams requested that the circuit court award her damages
 as a result of Ing's breach of the lease agreement and evict Ing from the property.
 
 [8]
 
 As I will discuss later in this separate opinion, the record shows that the lease agreement expired on January 26, 2015, and Ing had not paid rent since that date.
 

 ¶ 35. Ing filed his answer on April 16, 2015. He also filed a counterclaim for damages alleging that Adams was in breach of contract by not selling him the property.
 

 ¶ 36. At a bench trial on May 26, 2016, the circuit court heard testimony from Ing and Adams, as well from as Adams's husband, Michael Adams. Ing testified that as a result of Adams refusing to allow him to exercise his option to purchase the property, he had withheld rent payments since January 2015. The following exchange occurred:
 

 Q. And you haven't paid her any rent since January 2015, have you?
 

 A. No. Because she breached the contract, sir.
 

 Q. Okay. So your testimony and position is that she breached the contract and so you've been there February through December of 2015, 11 months no rent?
 

 A. Yeah.
 

 Q. And you've been there January through May 2016 and you've paid no rent?
 

 A. I haven't paid anything since she said, "no."
 

 ....
 

 Q. So we have 16 months of unpaid rent over there?
 

 A. Yes.
 

 ¶ 37. Regarding whether Ing paid his portion of the ad valorem taxes as required by the lease agreement, Ing testified as follows:
 

 Q. So the 2015 taxes you have not paid; is that right?
 

 A. Well, they breached the contract, yeah.
 

 Q. I understand that's your position. I'm asking you have you paid the taxes?
 

 A. No.
 

 However, Ing testified and presented evidence that he did pay taxes for 2014.
 

 ¶ 38. Michael testified that after learning that Ing intended to purchase the property, he contacted Mike Shaw with Shaw Appraisals, a real estate appraiser, to perform an appraisal. Michael testified that Shaw provided Michael with a real estate appraisal for the property. The appraisal was admitted into evidence as Exhibit 3, and the appraisal listed the value of the property as of February 13, 2015 (approximately three weeks after the lease agreement expired) to be $350,000.
 
 [9]
 
 The record reflects that Ing failed to provide an appraisal to dispute the appraisal Michael obtained.
 

 ¶ 39. Adams testified that she did want to sell the property to Ing. Adams stated that after Ing sent her the January 2015 letter stating that he intended to purchase the property, she told him that he could purchase the building for $700,000, and Ing agreed to the price. When Ing failed to make any payment towards the amount, Adams asked Ing at what date he intended to purchase the property. Adams testified that Ing told her that he would talk to his attorney. Adams testified that Ing never made any payments towards the purchase of the building, and that Ing also stopped making rent payments. Adams testified that she would still allow Ing to pay the past-due rent he owed her and also purchase
 the property for the fair market value.
 

 ¶ 40. At trial, Adams refuted Ing's claim that she refused to allow him to exercise his option to purchase the property. Adams maintained she wanted to sell Ing the property, and that she and her husband even celebrated after Ing made the offer. Adams testified as follows:
 

 Q. One final question, Mrs. Adams, did you ever tell Terry Ing that you would sell him the building?
 

 A. Yeah, I tell sell building. [sic]
 

 Q. How come four days later he received a letter saying you will not sell him the building?
 

 A. I don't know what's going on. I don't know what is going on. I tell him why my husband say sell. Tell I'm so happy. [sic]
 

 ¶ 41. On December 13, 2016, the circuit court entered an order finding that Ing did not materially breach the terms of his lease agreement with Adams, and thus Ing had the right to exercise the right to purchase the property up to end of the lease agreement. However, the circuit court found that Ing never offered Adams any money for purchase of property and "no appraisal was performed to complete the purchase option." As a result, the circuit court held that Ing "did NOT adequately exercise his option to purchase" the property.
 

 ¶ 42. The circuit court also found that after the lease period expired, Ing "was a hold-over tenant who had a month-to-month lease[,]" and that "[Adams] was obligated to give [Ing] a thirty (30) day notice of the termination of said 'amended' lease." The circuit court determined that "[Adams] implied a termination of said lease through the letter claiming violation of the terms of the lease and thereafter by verbally communicating the same to [Ing]." The circuit court found Ing in arrears and ordered Ing to vacate the property and pay Adams rent payments "in the monthly amount of $2500.00 per month as of the last rents paid minus any credit for partial payment, if any."
 
 [10]
 

 ¶ 43. A review of the record reflects that the amount of monthly rent in arrears assessed by the trial court was consistent with the terms of the lease agreement that allowed Ing to extend the lease beyond its expiration and continue to make rent payments in the amount of $2,500 a month. The trial court assessed Ing $2,500 a month in rent payments for the occupancy of the premises after the lease expiration.
 

 ¶ 44. "[W]e give a circuit-court judge presiding in a bench trial the same deference with regard to his findings as a chancellor."
 
 Falkner
 
 ,
 
 121 So.3d at 902
 
 (¶ 8) (internal quotation mark omitted). "[W]e review the circuit court's interpretation and application of the law de novo, and its findings of fact will not be reversed if supported by substantial evidence."
 

 Id.
 

 ¶ 45. As stated, I agree with the majority's decision to reverse the circuit court's determination as to the issue of the option contract and remand this case to the circuit court with instructions to order specific performance of the lease agreement utilizing the sole appraisal offered at trial and to set a closing date for the sale of the property. However, I disagree with the majority's determination that the circuit court erred in finding that Ing owes Adams unpaid rent from the time of the expiration of the lease agreement. The evidence in the record clearly supports the findings and determination of the circuit court in awarding Adams unpaid rent for
 the time period at issue, after the expiration of the lease agreement.
 

 ¶ 46. In reviewing the lease agreement in the case and the jurisprudence, I acknowledge that the law does not require that the purchase in an option contract occur prior to expiration of the lease. The law requires only that the option be exercised in accordance with the contract terms. The record reflects that in the written lease agreement, Ing possessed the right to extend the lease for an additional five years beyond its expiration and continue to rent the premises for $2,500 a month. However, Ing remained beyond the expiration of the written lease agreement without paying rent after the lease expired. The record shows that the trial court assessed Ing $2,500 in monthly payments for the sixteen months he occupied the premises after the written lease expired. This amount reflects the same amount of monthly rent as set forth in the lease agreement. In sum, the record shows that Ing did not pay rent after the lease expired in January 2015, and during this time of unpaid rent, no written lease agreement existed.
 

 ¶ 47. The circuit court made the following findings of fact in his judgment:
 

 [Adams] asserted that [Ing] was in violation of the terms of the lease by not tendering [his] agreed portion of the ad valorem tax liability, by failing to comply with city ordinance on commercial add-ons, and by failing to maintain insurance; and thus, the purchase option was null and void. [Adams,] in writing, gave notice to [Ing] of his breach of the lease. The alleged lease breaches were refuted by [Ing] with proof.
 

 ....
 

 [Ing] was a hold-over tenant who had a month-to-month lease after said written lease period expired. [Adams] was obligated to give [Ing] a thirty (30) day notice of the termination of said "amended" lease.
 

 [Adams] implied a termination of said lease through the letter claiming violation of the terms of the lease and thereafter by verbally communicating the same to [Ing].
 

 The circuit court thus determined that Ing "is in arrears and said rents are due to [Adams] in the monthly amount of $2500.00 per month as of the last rents paid minus any credit for partial payment, if any." The circuit court ordered Ing to vacate the premises.
 
 [11]
 

 ¶ 48. Regarding Ing's claim that he was entitled to withhold rent payments because Adams materially breached the lease agreement, I recognize that the supreme court has held that where a tenant holds over beyond the expiration of his lease, the "action against a hold over tenant is separate and distinct from an action based on the lease agreement."
 
 Murphree v. Aberdeen-Monroe Cty. Hosp. by Bd. of Trustees
 
 ,
 
 671 So.2d 1300
 
 , 1303-04 (Miss. 1996). In
 
 Murphree
 
 , the supreme court explained as follows:
 

 [t]he common law is that holding over beyond the expiration of a lawful tenancy creates a distinct cause of action for each term of the implied tenancy. Splitting an action into separate claims for separate terms may or may not still be appropriate. It remains true, however, that an action based on a prolonged holdover rests on different facts and law than those at issue in a possessory action at the conclusion of a lease term.
 

 Id.
 

 at 1303
 
 (quoting
 
 650 Park Avenue Corp. v. McRae
 
 ,
 
 665 F.Supp. 228
 
 , 233 (S.D.N.Y. 1987) (citations omitted) ).
 

 ¶ 49. The record reflects that the written lease agreement at issue expired on January 26, 2015, and the record contains no evidence to show that the terms of the lease agreement were extended by either party.
 
 [12]
 
 I find that since the written lease agreement expired and the terms were not extended, a month-to-month tenancy was then implied after January 25, 2015.
 
 [13]
 
 Accordingly, I would affirm the circuit court's determination that Ing owed rent to Adams for occupying the premises as a month-to-month tenant after expiration of the lease, since such finding is supported by substantial evidence.
 
 Falkner
 
 ,
 
 121 So.3d at 902
 
 (¶ 8) ;
 
 110 S. St. LLC v. Atrium Gentlemans Club
 
 ,
 
 217 So.3d 794
 
 , 802 (¶ 35) (Miss. Ct. App. 2017).
 

 At trial, Ing clarified in his testimony that the option to purchase set forth in the lease agreement referred to the entire building and not just the basement.
 

 In her complaint, Adams sought only "past-due rent," and did not request double rent.
 

 The appraisal reflects that Shaw is a state-certified real-estate appraiser.
 

 The circuit court awarded Adams past-due rent payments in the monthly amount as set forth in the lease agreement. The circuit court did not award Adams double rent payments.
 

 See
 

 Miss. Code Ann. § 89-7-7
 
 (Rev. 2011) (remedy for arrears).
 

 See
 
 K.F. Boackle,
 
 Mississippi Landlord and Tenant Law with Forms
 
 § 7:3 (2005) ("The landlord can sue for rent in arrears"; "The action against the holdover tenant is a separate action from one based on the lease agreement.");
 
 see also
 
 Johnny C. Parker,
 
 Mississippi Law of Damages
 
 § 27:14 (3d ed. 2014).
 

 See
 

 Murphree
 
 ,
 
 671 So.2d at 1303-04
 
 .