BECK, et al., MINORS, BY NEXT FRIEND *v.* ROBINSON, et al.

No. 42677          June 3, 1963          154 So. 2d 284

*Clark, Townsend & Davis,* Indianola, for appellant.

*P. J. Townsend, Jr.,* Drew; *Stanny Sanders,* Greenwood, for appellees.

McGEHEE, C. J.

On May 4, 1957, J. T. Beck died in Sunflower County, Mississippi, leaving a last will and testament dated April 28, 1955, which was duly admitted to probate in the Chancery Court of Sunflower County, Mississippi. Thereafter a subsequent will was found dated December 22, 1956, and the first will was thereupon set aside and

the second was duly admitted to probate as the last will and testament of the deceased.

The appellee Ida Sue Beck, widow of J. T. Beck deceased, was by the terms of the will appointed executrix thereof, to serve "without bond". She was also relieved thereby of any duty or responsibility of filing an inventory, or of making any annual or final account to any court, or to make any report of any kind to any court.

Shortly after admission to probate of the second will, which will, as did the first, named as beneficiaries Ida Sue Beck, widow, and her four minor children, to-wit, Jane Denise Beck, John Thomas Beck, Jr., Gene Reta Beck, and Bradford Barner Beck, the executrix, Ida Sue Beck, filed a petition in the Chancery Court of Sunflower County asking the court to construe the said will of her late husband J. T. Beck, deceased.

This petition was filed by Ida Sue Beck for and on behalf of herself and the said minor children. The petitioners were represented by competent and able counsel, and the court appointed the Hon. William C. Keady, a member of the Washington County bar, to represent the minors as guardian ad litem. Answers were duly filed on behalf of defendants. A final decree, construing the will of the deceased was entered on November 18, 1957, during a special term of the Chancery Court of Sunflower County which was held for the purpose of construing the will before the expiration of the six-month period of time before the wife of decedent, Ida Sue Beck, could determine whether or not to renounce the will. The decree rendered on the above mentioned date was a compromise and consent decree, which undertook to settle all of the issues presented by the pleadings to construe the will of the deceased.

The second will contained among other items the following: "I give, devise and requeath unto my beloved wife, Ida Sue Beck, all my property, both real

and personal, wheresoever located to be held in trust for our four children, Jane Denise Beck, John Thomas Beck, Jr., Gene Reta Beck, and Bradford Barner Beck.'' And said will contained the further provision: ''I direct that the four mentioned children shall share and share alike all properties upon my wife's death.''

The testator, J. T. Beck, owned at the time of his death an undivided one-half interest in the T. H. Edmondson Estate and his mother, Hattie Gene Beck, owned the other one-half undivided interest in the said T. H. Edmondson Estate. That estate, at the death of J. T. Beck on May 4, 1957, owned a balance of $61,410.57 in cash; securities of the value of $113,946.75; from 4300 to 4500 acres of improved Delta farm land located principally in Sunflower County; nearly 100 acres of such land in Leflore County known as the Strain Place; a 4-8 stand cotton ginning plant in the town of Ruleville in Sunflower County; farm equipment of the book value of $23,668.33; a balance of $5,242.69 in the building account of the said plantation; and the testator J. T. Beck owned individually two houses in the town of Ruleville valued at $17,500 for the two of them, and five shares of stock in the Bank of Ruleville.

During the hearing on the bill of Ida Sue Beck and her minor children for the construction of the will of J. T. Beck deceased, there was a conference held and a compromise and consent decree was agreed upon whereby Ida Sue Beck, executrix of the will and widow of the deceased, relinquished any right that she may have had to renounce the will of J. T. Beck deceased and take a one-fourth undivided interest in the entire estate, in fee simple, as an heir at law of the deceased, under the statutes of descent and distribution. And the said Ida Sue Beck agreed in the said compromise and consent decree to receive as her part of her deceased husband's estate a life interest in one-half thereof, and which would mean that she would be entitled to receive

one-half of the income from all of said property for and during the remainder of her life, with remainder to the four children hereinbefore named, and the four children were also to receive in fee simple the other one-half undivided interest of the estate of J. T. Beck deceased.

The oldest of the four children, that is to say, Jane Denise Beck, was a child of Ida Sue Beck by a former marriage, whereas John Thomas Beck, Jr., Gene Reta Beck and Bradford Barner Beck were children born of the marriage of the said J. T. Beck and Ida Sue Beck. In other words, if the widow had renounced the will and had taken under the statutes of descent and distribution in this State her fourteen year old daughter, Jane Denise Beck would have received no part of the estate of J. T. Beck deceased, she not being his child or other heir at law of him.

Subsequent to the rendition and entry of the decree of November 18, 1957, compromising and consenting to a settlement of all of the issues involved in the suit to construe the will, Mrs. Hattie Gene Beck, mother of the deceased J. T. Beck, filed a suit to partite the land of the T. H. Edmondson Estate, and thereafter a suit for partition of the personalty of the T. H. Edmondson Estate was filed by Ida Sue Beck and her children against Hattie Gene Beck, who then owned as a tenant in common with them, a one-half undivided interest in the T. H. Edmondson Estate. From the year 1905 the property of the T. H. Edmondson Estate had remained intact. In that partition suit Ida Sue Beck made herself a defendant in her individual capacity and also made the four minor children defendants. The personalty of the T. H. Edmondson Estate, which was due to have been received therefrom by Ida Sue Beck and her children amounted to approximately $145,000 to $164,000. As to whether or not any land was sold under the partition suit as filed by Mrs. Hattie Gene Beck, or as to

what became of the proceeds, if any, of the sale of realty for partition is not shown by this record.

Thereafter Ida Sue Beck married W. W. Robinson, Jr., of Memphis, Shelby County, Tennessee, and of course moved to Memphis with her minor children and the assets which she had received from the sale of the personalty of the T. H. Edmondson Estate.

After taking up her residence in Memphis Ida Sue Beck and her husband W. W. Robinson, Jr., purchased a home in Memphis estimated by her to be worth approximately $67,000. As we understand the record, they assumed an indebtedness on this Memphis home of approximately $24,000, and reported to the Chancery Court in Sunflower County that she had used more than $12,000 of the trust funds belonging to the said minors, along with other funds, to make the payment of the purchase price for the said Memphis home, and she reported that she had taken a four-fifths interest in the title to the home in the names of the said minors. But she later corrected that report by saying that in negotiating a loan on the property in Memphis she learned that she could not borrow on property belonging to minors and she said that she *refunded* to the account of the minors the more than $12,000 that she had used of their funds. She later explained that what she really did was to relinquish her interest of equivalent value in the Beck home at Ruleville in favor of the said minors.

The present suit was filed for the minors by their paternal grandmother, Hattie Gene Beck, against Ida Sue Beck Robinson and others to require Ida Sue Beck Robinson, as life tenant and trustee in a one-half undivided interest in the J. T. Beck Estate to file with the Chancery Court of Sunflower County a bond for the protection of the interest of the said minors, notwithstanding the provision in the will and consent decree relieving her of doing so, and to also file an accounting as to what funds she had received as corpus and as to

what funds she had received as income on behalf of the said minors, the said accounting having been required by the compromise and consent decree of November 18, 1957. As hereinbefore stated, both the first and the second will of J. T. Beck deceased and the compromise and consent decree rendered in the proceeding to construe the said will, all relieved the said Ida Sue Beck of any duty or responsibility of making a bond or filing any annual or final account in the cause.

Moreover the court retained jurisdiction of the matter in order to make such orders and decrees from time to time in the future as may be deemed mete and proper for the protection of the interest of the said minors.

Upon the trial of the instant case Ida Sue Beck Robinson testified that she had expended more than $12,000 on behalf of the said minors, for their support, maintenance and education, than she had received as income from the estate. And she testified that she had taken out a life insurance policy on her own life in favor of all of the said minors in the John Hancock Life Insurance Company for the sum of $75,000 and that she was currently keeping the premiums paid on this policy, but out of the funds of the said minors. The chancellor found as a fact that her said representations were true, and that ''said life insurance policy together with the income of the defendant, Ida Sue Beck Robinson, as life tenant of the lands in Mississippi was adequate security for the protection of the interest of the said minors, at this time,'' and the court therefore approved the substitution of the said life insurance policy in lieu of a fiduciary bond, since it was discretionary with the court as to whether a bond should be required of her anyway.

In the case of Beckett v. Howorth, 237 Miss. 394, 115 So. 2d 48, this Court said: ''Under the terms of the will, Mrs. Beckett was relieved of entering into bond as executrix. There was no provision in the will with

reference to any requirement of bond for the trustees. We think, however, that by virtue of the inherent chancery jurisdiction over trust estates, the chancellor was amply warranted in requiring a bond of the trustee. At any rate, it was a question addressed to the discretion of the court, * * *.'' Also see the cases of Martin v. Martin, 69 Miss. 315, 13 So. 267; Hill v. Godwin, 114 Miss. 324, 75 So. 122; and in Rife, et al v. Rife, et al, 154 Miss. 529, 122 So. 739, where it was held that as the testator intended that the life tenant should have possession of the property without giving security, equity will give effect to this intention. See also 90 C. J. S., Trusts, Section 224; 14 A. L. R. 1076.

It therefore seems that under the Mississippi ruling the court will respect the wish of the testator unless the cestui que trust can show that the property will be wasted or lost, and the appellants fail to do so in the instant case.

In the case of Beckett v. Howorth, supra, the chancellor required a bond of the trustee and we think that under our decisions it was within the chancellor's discretion to require or not to require a bond in the instant case.

While our attention is not called to any case where a life insurance policy has been approved and substituted for a fiduciary bond, we think that since it was discretionary with the chancellor as to whether a bond should be required at all in view of the provision in the will whereby the testator relieved the executrix, life tenant and trustee from giving a bond and filing an accounting, we would not be justified in reversing the action of the chancellor in overruling the petition to require a bond and an accounting under all the facts and circumstances of the instant case.

The attorneys' fees and auditor's fees allowed by the chancellor upon the hearing of this case included, as we understand the record, services for preparing and

filing inventory, accounting, income tax reports, keeping and posting of books and records, and in resisting this proceeding to require Ida Sue Beck to post the bond petitioned for, and we think that these fees were properly allowed.

It appears that Ida Sue Beck in compliance with the requirement of the decree of November 18, 1957, filed an inventory on behalf of each of the said minors, and her testimony is to the effect that the said accounts of the estates of each of the said minors are kept by her father, an auditor, and that the accounts are at Ruleville subject to the inspection of the appellants at any reasonable time that the same may be desired. Upon the hearing of this cause it appears that the court required the filing of an account of both the corpus and income of said minors that had been received by Ida Sue Beck Robinson from November 17, 1957, to May 14, 1962.

We are unable to say that the decree of the chancellor in denying the specific relief prayed for was manifestly wrong, and therefore the same must be and it is hereby affirmed.

Affirmed.

*Gillespie, McElroy, Rodgers, and Jones, JJ.,* concur.