# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CT-00800-SCT

*IN THE MATTER OF THE ESTATE OF BRENDA LOUISE BARGAS FLOWERS: CLAIRE C. FLOWERS AND BRENDA JANE FLOWERS PAIXAO*

***v.***

*THE ESTATE OF BRENDA LOUISE BARGAS FLOWERS, THROUGH ITS EXECUTOR, KNOX LEMEE FLOWERS, CECIL C. LANG AND LINDA S. LANG*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/2016 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | FLOYD M. MELTON, JR. |
| | FLOYD M. MELTON, III |
| | RICHARD A. OAKES |
| | W. S. STUCKEY, JR. |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | DAVID NEIL McCARTY |
| ATTORNEY FOR APPELLEES: | RICHARD A. OAKES |
| | FLOYD M. MELTON, JR. |
| | FLOYD M. MELTON, III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART.  THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED - 03/07/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Claire Clements Flowers (Claire) and Brenda Jane Flowers Paixao (Jane) appealed the judgment of the Leflore County Chancery Court denying their request for an accounting of the estate and testamentary trust of their mother, Brenda Bargas Flowers. The chancery court concluded that the daughters did not have a current interest in their mother's estate.

¶2.     On appeal, the daughters argued that they were specifically named in the will to be remainder beneficiaries and thus have standing to request an accounting. The Court of Appeals found that Claire and Jane have standing to request an accounting, finding that they have limited rights as holders of a shifting executory interest to prevent future waste.[1] *In re Flowers v. Flowers*, No. 2016-CA-00800-COA, 2018 WL 718626 (Miss. Ct. App. Feb. 6, 2018).

¶3.     The estate petitioned this Court for a writ of certiorari, claiming that the daughters' appeal was untimely and that the Court of Appeals misapplied caselaw related to shifting executory interests and standing to request an accounting. We granted certiorari not to determine whether the sisters have standing, because we agree that they do, but to determine whether the chancellor abused his discretion in denying the sisters' accounting request. We find no manifest error in the chancery court's decision to deny Claire and Jane's request for an accounting. Accordingly, we reverse that portion of Court of Appeals' judgment and reinstate the chancery court's decision denying Claire and Jane's request for an accounting.

---

[1] Judge Carlton, J., writing. Lee, C.J., Griffis, P.J., Barnes and Greenlee, JJ., concurring. Irving, P.J., concurring in part and in the result without separate opinion. Tindell, J., concurring in part and dissenting in part with separate written opinion, joined by Wilson, J. Fair and Westbrooks, JJ., not participating.

**FACTS AND PROCEDURAL HISTORY**

¶4. "Richard and Brenda Flowers married and had three children: a son, Knox Lemeé Flowers, and two daughters, Claire and Jane." *Flowers*, 2018 WL 718626, at *1. "In 2004, Claire gave birth to a son, D.A.," whom Richard and Brenda adopted in 2005. *Id.* On April 15, 2006, Richard died. *Id.* On July 24, 2006, Brenda executed her last will and testament and died about a month later. *Id.*

¶5. "Brenda's will appointed Knox as her estate executor and provided that he 'serve without bond, inventory, appraisal[,] or accounting to any [c]ourt.'" *Id.* "The will also established a trust that named D.A.," who was two years old at the time, "and his descendants as the income beneficiaries." *Id.* "The will provided for the trust's termination either at the time of D.A.'s thirtieth birthday or his death, whichever event occurred first." *Id.*

¶6. "The will further stated that at the time of termination, the trust's assets were to be divided evenly between D.A. and Knox." *Id.* If both D.A. and Knox died "without any descendants before the trust's termination, the trust's assets were to be distributed to Claire and Jane as beneficiaries, either directly or through conservatorships." *Id.* Brenda's will "stated that the trustee 'shall . . . account fully and completely annually, throughout the term of this [t]rust, to such income and/or corpus beneficiaries as there may be or[,] in the event such beneficiary is a minor or a ward, then to such beneficiary's guardian.'" *Id.*

¶7. Brenda's "will was probated in Leflore County, and Knox was appointed her estate executor." *Id.* at *2. "In November 2007, the chancery court awarded custody of D.A. to his paternal grandfather and step-grandmother, Carter and Linda Lang." *Id.*

3

¶8. In February 2008, the chancellor signed an order that disposed of numerous motions filed by the parties. *Id.* " In doing so, the chancellor granted Claire's requests to withdraw her previously filed motion for an accounting of [Brenda's] estate and her petition for Knox's disqualification as estate executor." *Id.* The chancellor further ordered Knox, as executor, to take the following actions upon the closing of Brenda's estate

> [L]ist the household goods and personal belongings of Brenda . . . , as well as lockbox contents[,] that came into his possession as [e]xecutor and . . . state where these items are presently located, and any items converted to his personal possession or disposed of for his benefit will be noted and charged against any [e]xecutor's fee, as may be determined and approved by this [c]ourt[; and]
> . . . .
>
> [F]urnish an accounting of [Brenda's] [e]state from the date of death to the date of any final decree granting Claire . . . [g]uardianship of [D.A.] due to the appeal on file at this time . . . and[] that Claire . . . is entitled to an accounting, *if and when she becomes a vested remainder beneficiary of this estate from the date of such vesting until delivery of assets to her.*

*Id.* (emphasis added by Court of Appeals).

¶9. "Despite withdrawing her first motion for an accounting" in August 2015, Claire, proceeding *pro se*, filed a second "petition for a full accounting," alleging "that Knox and others associated with the administration of Brenda's estate had mismanaged and misappropriated estate and trust assets." *Id.* Claire claimed that "even though she was a remainder beneficiary of [Brenda's] will, she still [had] standing to demand an accounting." *Id.*

¶10. In February 2016, "Knox filed a final accounting in [Brenda's] estate and a petition to be discharged as executor." *Id.* at *3. "[A]s provided in the [2008] decree, Knox prepared

4

the estate accounting and presented it in camera to the chancellor, D.A., and D.A.'s guardians, the Langs." *Id.*

¶11.   In March 2016, the chancery court denied Claire's August 2015 "petition for a full accounting of [Brenda's] estate and testamentary trust," acknowledging the court's prior ruling "that Claire would be entitled to an accounting 'if and when she [became] a vested remainder beneficiary' of [Brenda's] estate." *Id.*   Claire filed a motion for reconsideration, which the chancery court denied. *Id.*

¶12.   The Court of Appeals reversed the chancery court's order denying Claire and Jane's request for an accounting, finding that Brenda's will gave Claire and Jane a shifting executory interest in the assets of the testamentary trust. *Flowers*, 2018 WL 718626, at *4. And "[a]s holders of a shifting executory interest in their mother's estate, Claire and Jane possess limited rights to enjoin the possessory owners from future waste of the estate." *Id.* (citing *Hemphill v. Miss. State Highway Comm'n*, 245 Miss. 33, 145 So. 2d 455, 457 (1962)).

¶13.   The Estate filed a motion for rehearing, which the Court of Appeals denied. The Estate then petitioned this Court for certiorari, claiming that Claire and Jane's appeal was untimely and that the Court of Appeals misapplied caselaw related to shifting executory interests and standing to request an accounting.

## STANDARD OF REVIEW

¶14.   "This Court applies a limited standard of review on appeals from chancery court." *Flowers*, 2018 WL 718626, at 3 (citing *Jackson v. Mills*, 197 So. 3d 430, 437 (Miss. Ct.

5

App. 2016) (citing ***McNeil v. Hester***, 753 So. 2d 1057, 1063 (Miss. 2000))). "If supported by substantial credible evidence, we leave a chancellor's factual findings undisturbed unless the chancellor applied an incorrect legal standard, was manifestly wrong, or was clearly erroneous." ***Id.*** (citing ***Jackson***, 197 So. 3d at 437) (quoting ***Davidson v. Davidson***, 667 So. 2d 616, 620 (Miss. 1995); citing ***Ainsworth v. Ainsworth***, 139 So. 3d 761, 762 (Miss. Ct. App. 2014))). "We review questions of law de novo." ***Id.*** (citing ***Jackson***, 197 So. 3d at 437) (citing ***Lowrey v. Lowrey***, 25 So. 3d 274, 285 (Miss. 2009))).

## DISCUSSION

¶15. We hold today that the chancellor, in his discretion, correctly held that under Brenda's will, Claire and Jane have so remote an interest with such a mere expectancy of a future inheritance that they are not entitled to an accounting until that interest vests. The Court of Appeals relied on ***Hemphill v. Mississippi State Highway Commission***, but we find that it does not apply here because that case was restricted to a consideration of constitutional rights. We granted certiorari to determine whether the chancellor abused his discretion in denying Claire and Jane's accounting request. We find the denial of that request was not an abuse of discretion, and we affirm that portion of the chancellor's judgment.

¶16. Chancellors have long been vested with discretionary authority to decide matters of equity. Article 6, section 159, of the Mississippi Constitution confers on chancery courts jurisdiction of "All matters in equity . . . ," as well as other enumerated matters. "A court of equity is a court of conscience. The function of the chancellor is, upon equitable considerations, to winnow the wheat from the straw, and his decree will not be set aside on

6

appeal unless, as is not the case here, it is made to appear that it is not equitable but inequitable to let it stand." ***Durkin v. Lovknit Mfg. Co.***, 208 F.2d 665, 667 (5th Cir. 1953).

¶17.  The chancellor, in reviewing the will, found that the will's terms reflected that in creating the testamentary trust, Brenda had named D.A. the income beneficiary, with the principal to be placed in trust until D.A.'s thirtieth birthday or his death, whichever occurred earlier.  Upon either D.A.'s thirtieth birthday or his death, Brenda's will directed that the trust's principal be evenly divided between D.A. and Knox "per stirpes to include adopted children."

¶18.  The terms of the will also discussed disbursement of trust assets to beneficiaries who were under the age of twenty-one at the time of the trust's termination or who died before the trust's termination.  Finally, establishing that D.A. and Knox were to inherit subject to a condition subsequent of survivorship, the will stated as follows:

> If there are no surviving beneficiaries, descendants of deceased former beneficiaries, former beneficiaries who are living, or descendants of deceased former beneficiaries, then his or her interest shall be distributed share and share alike to the [c]onservatorships for my two daughters[, Claire and Jane;] should either one or both of them not have a [c]onservatorship at the termination of this trust[,] then distribute their portion outright to them.

¶19.  Thus, Brenda's will established that if D.A. and Knox died *without any descendants*, then the remainder would be distributed to Claire and Jane; at that point, their interest would vest. If Knox and D.A. died today without any descendants, then Claire and Jane would be entitled to receive an accounting because their interest would vest.  But affording Claire and Jane an accounting now, when the interest has not yet vested, would result in an inequitable, unjust burden on the court and furthermore on the estate.

7

¶20. This matter has been ongoing for the last ten years. The beginning traces back to D.A.'s birth in 2004 and his subsequent adoption in 2005 by his maternal grandparents, Richard and Brenda Flowers. After both of their deaths, custody disputes over D.A. ensued. After custody was resolved, estate disputes began. All along, both parties conceded that the will creating the trust was primarily for the benefit of D.A., and Claire and Jane fully recognized that their interest is a future interest. But they continued to disrupt, prolong, and dwindle the estate and its assets. After numerous petitions and a 616-page pleading alleging a plethora of wrongdoing by everyone involved in the case, the estate was finally nearing its closing when Claire and Jane requested yet another accounting.

¶21. Claire and Jane argue that an accounting is necessary because proof of mismanagement exists; Knox did not file annual accountings under Mississippi Code Section 91-7-277 (Rev. 2018). This Court has held, "Generally, executors and administrators are required to submit an annual accounting to the court." *In re Estate of Baumgardner*, 82 So. 3d 592, 604-05 (Miss. 2012) (citing Miss. Code Ann. § 91-7-277 (Rev. 2004)). But the law also recognizes that a testator may waive an accounting. *Id.* at 605.

¶22. As *Baumgardner* reiterated, "It is not error for a chancellor to refuse to order an accounting when the language of the trust expressly allows the trustee to serve without rendering an accounting." *Id.* (citing *In re Stubbs-Kelly Trust v. Wood*, 573 So. 2d 734, 735-36 (Miss. 1990)); *see also Beck v. Robinson*, 247 Miss. 264, 154 So. 2d 284 (1963) (finding no abuse of discretion in the chancery court's decision to uphold the wish of a testator, whose will relieved the trustee from giving bond and filing any annual or final

accounting when no showing was made by the *cestui que trust* of waste or loss to the property).

¶23. Here, Brenda's will states that the trustee "shall . . . account fully and completely annually, throughout the term of this trust, to such income and/or corpus beneficiaries as there may be or[,] in the event such beneficiary is a minor or a ward, then to such beneficiary's guardian." Neither Claire nor Jane yet fall into one of these categories—irrespective of whatever remainder interest they may have in the property. Therefore, neither is entitled to an accounting absent a showing of waste, loss, mismanagement, or fraud. *Beck*, 154 So. 2d at 288; *Wood*, 573 So. 2d at 736 n.2.

¶24. Based upon our review of the record, Claire and Jane have made no such showing of mismanagement. "[A]n individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law." *SASS Muni-V. LLC v. DeSoto Cty.*, 170 So. 3d 441, 446 (Miss. 2015) (internal citations and quotation marks omitted).

¶25. While this Court recognizes the importance of accountings to prevent the mismanagement of estates, we do not find that Claire and Jane presented any proof of mismanagement to the chancellor. Further, D.A., the income beneficiary, individually or through his guardians never alleged mismanagement.

¶26. While Claire argues that damage to the corpus of the trust could affect her ability to take under the will, we find that absent evidence of mismanagement, courts are not responsible for ensuring that enough assets remain for remainder beneficiaries.

9

¶27. We agree with Judge Tindell's dissent: "It is said that all good things must come to an end. In this case, it is time for a bad thing to come to an end." *Flowers*, 2018 WL 718626, at \*7 (Tindell, J., concurring in part and dissenting in part). Accordingly, the chancellor, in his discretion, appropriately decided to end the litigation here.

¶28. "If supported by substantial credible evidence, we leave a chancellor's factual findings undisturbed unless the chancellor applied an incorrect legal standard, was manifestly wrong, or was clearly erroneous." *Flowers*, 2018 WL 718626, at \*3 (citing *Jackson*, 197 So. 3d at 437) (quoting *Davidson*, 667 So. 2d at 620; citing *Ainsworth*, 139 So. 3d at 762)). This Court holds that chancellors have long been vested with discretionary authority to decide matters of equity, and in this particular case, equity requires a denial of Claire and Jane's accounting request for such a remote interest.

**CONCLUSION**

¶29. Accordingly, the chancellor's ruling is affirmed. The chancellor was well within his discretionary authority to deny Claire and Jane's accounting request. To the extent the Court of Appeals held otherwise, its judgment is reversed.

¶30. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., MAXWELL AND ISHEE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND CHAMBERLIN, J. GRIFFIS, J., NOT PARTICIPATING.**

**COLEMAN, JUSTICE, DISSENTING:**

¶31. The Court of Appeals held that Claire and Jane have standing to request an accounting

10

of their mother's estate and testamentary trust. I agree with the Court of Appeals and, accordingly, would affirm. The majority agrees that Claire and Jane do, in fact, have standing. Maj. Op. at ¶ 3. However, I must, with respect, dissent, because the majority considers the merits of the sisters' request for an accounting and thereby affirms the chancery court and reverses the Court of Appeals on an issue not reached by it. While the chancellor's final judgment does rely in part on a 2008 order denying Claire's initial request for an accounting in denying the newer request by both Claire and Jane years later, Jane was not a party in 2008. Moreover, the chancellor's May 6, 2016, final Decree discussed at length the effect of the nature of the sisters' interest in the trust on their ability to bring the request for accounting. The chancellor wrote, "Claire Clements Flowers and Brenda Jane Flowers have no standing to file any pleadings or other matter in this cause."

¶32.    A majority of the Court of Appeals held that Claire and Jane "have *standing to request an accounting* of their mother's estate and testamentary trust pursuant to their limited rights." *In re Flowers v. Flowers*, No. 2016-CA-00800-COA, 2018 WL 718626, at \*3 (¶ 15) (Miss. Ct. App. Feb. 6, 2018) (emphasis added). Judge Tindell disagreed, writing that he would "affirm the chancellor's judgment that the [daughters] *lack standing to request an accounting*." *Id.* at \*8 (¶ 34) (Tindell, J., concurring in part and dissenting in part) (emphasis added). Although the Court of Appeals was divided, it agreed that the issue before it the chancellor's determination as to standing. Accordingly, the majority miscasts the case when it writes that "[w]e granted certiorari to determine whether the chancellor abused his discretion in denying the Claire and Jane's accounting request." Maj. Op. ¶ 15. The majority

11

holds that the "chancellor was well within his discretionary authority to deny the Claire and Jane's accounting request." Maj. Op. ¶ 29. However, the record is clear that the chancellor based his denial on the perceived lack of standing rather than on the merits of the request for an accounting; he dismissed the request for lack of jurisdiction. "Standing is an aspect of subject matter jurisdiction." *Hobson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1031 (¶ 17) (Miss. 2015). We review standing *de novo*. *Id.* Accordingly, no decision exists from the trial court that we can review for abuse of discretion.

¶33. As noted above, the majority agrees that the trial court erred in finding the sisters lacked standing. The majority writes, "We granted *certiorari* to determine not whether the sisters possess standing, *because we agree that they do*, but to determine whether the chancellor abused his discretion in denying the sisters accounting request." Maj. Op. ¶ 3 (emphasis added). Despite the majority's apparent reversal of the chancellor on the issue of standing, the majority affirms the chancellor by deciding an issue no lower court has fully addressed—the merits of the Claire and Jane's request for an accounting. For reasons more fully set forth below, I agree with the majority that the chancellor erred in finding the sisters lacked standing. However, because the chancellor's dismissal of the request for an accounting prevented the consideration of the merits of the request in the trial court—especially as to Jane—and quite possibly prevented the full development of a record to inform our consideration of the merits, I would remand the case rather than reach the merits for the first time on appeal. "One of the most fundamental and long established rules of law in Mississippi is that the Mississippi Supreme Court will not review matters on appeal

12

that were not raised at the trial court level." ***Miss. Transp. Comm'n v. Adams***, 197 So. 3d 406, 416 (¶ 30) (Miss. 2016); *see also **Whittington v. H.T. Cottam Co.***, 158 Miss. 847, 130 So. 745, 749 (1930) ("If th[e] [C]ourt will decide correctly the questions presented and briefed in cases, it will be doing well, without going out on a hunt for other questions.").

¶34.    Standing is a question of law reviewed under a *de novo* standard. ***SASS Muni-V, LLC v. DeSoto Cty.***, 170 So. 3d 441, 445 (¶ 12) (Miss. 2015). "Standing is an aspect of subject matter jurisdiction." ***Hobson***, 179 So. 3d at 1031 (¶ 17); *see also **In re City of Biloxi***, 113 So. 3d 565, 570 (¶ 13) (Miss. 2013) ("[T]he question of standing is a jurisdictional issue that can be raised at any time by any party or by the Court, and the standard of review is *de novo*."). "The existence of subject-matter jurisdiction . . . turns on the well pleaded allegations of the complaint which are taken as true." ***Hobson***, 179 So. 3d at 1032 (¶ 17) (quoting ***SASS Muni-V***, 170 So. 3d at 445).

¶35.    The Court has defined the requirements of standing:

> It is well settled that Mississippi's standing requirements are quite liberal compared to the standing requirements set out in Article III of the United States Constitution. To have standing to sue, a party must assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law. An interest is deemed colorable if it appears to be true, valid, or right. An individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law. For a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public.

***SASS Muni-V***, 170 So. 3d at 445-46 (¶ 13) (citations and quotations omitted).

¶36.    In the case *sub judice*, the Mississippi Court of Appeals was divided on the issue of

13

standing; however, it agreed about the issue presented. The Court of Appeals wrote, "Since standing is a jurisdictional issue, we review it *de novo*." **Flowers**, 2018 WL 718626, at *3 (¶ 15). The Court of Appeals held that Claire and Jane "have limited rights and related standing as holders of a shiftimg executory interest to prevent future waste, and [it held] that the [daughters] have standing to request an accounting of their mother's estate and testamentary trust pursuant to their limited rights." **Id.** at *1 (¶ 2). The Court of Appeals, relying on **In re Estate of Baumgardner**, 82 So. 3d 592 (Miss. 2012) and **Hemphill v. Mississippi State Highway Commission**, 145 So. 2d 455 (Miss. 1962), wrote that "Mississippi precedent clearly establishes that vested remainder beneficiaries of a testamentary trust have standing to file suit and that holders of a shifting executory interest have some limited rights that can provide standing to file suit." **Flowers**, 2018 WL 718626, at *4 (¶ 17). The Court of Appeals concluded that Claire and Jane "possess a shifting executory interest in their mother's testamentary trust" and, as a result, they "possess limited rights to prevent future waste." **Id.** at *4 (¶ 18).

¶37. The Court of Appeals, relying on **Hemphill**, recognized "an independent value and significance on future interests" that exists whether the interest is "vested or not." **Id.** at *5 (¶ 21). The Court of Appeals held that Claire and Jane's contingent remainder interest "'has achieved status as a protectable interest for many purposes' when the 'contingent remainder is limited to an existing ascertained person'...." **Id.** (quoting **Hemphill**, 145 So. 2d at 462). As such, the Court of Appeals wrote that "when a contingent remainder is limited to an existing ascertained person, there is no question but that the courts will recognize the interest

14

as having present existence." *Flowers*, 2018 WL 718626, at *5 (¶ 21) (quoting *Hemphill*, 145 So. 2d at 462). The Court of Appeals held that the chancellor erred in denying Claire and Jane's request for an accounting of their mother's estate and testamentary trust; "[a]s holders of a shifting executory interest in their mother's estate, Claire and Jane possess limited rights to enjoin the possessory owners from future waste of the estate." *Flowers*, 2018 WL 718626, at *5 (¶ 22). As such, the Court of Appeals reversed the chancellor's judgment finding that the daughters lacked standing to request an accounting. *Id.*

¶38. Judge Tindell dissented in part and wrote a separate opinion, joined by Judge Wilson. *Id.* at *7-8 (¶¶ 31-36) (Tindell, J., concurring in part and dissenting in part). Judge Tindell wrote that, while he agreed that the daughters had a shifting executory interest in their mother's testamentary trust, the language of the will "gave the [daughters] a purely executory interest that has not become possessory." *Id.* at *8 (¶ 35) (Tindell, J., concurring in part and dissenting in part). Judge Tindell reasoned, "The 'vested or not' status of the shifting executory interests is an important distinction that must be considered. And furthermore, unlike the majority, I find that the [daugthers]' executory interest has never vested." *Id.* at *7 (¶ 33) (Tindell, J., concurring in part and dissenting in part). Judge Tindell, relying on *Bridgforth v. Gray*, 222 So. 2d 670, 672 (Miss. 1969), concluded that the daughters' "executory interest remains unvested and, as a result, they lack standing necessary to demand an accounting of their mother's trust." *Id.* at *8 (¶ 35) (Tindell, J., concurring in part and dissenting in part).

¶39. In denying that the request for an accounting, the majority concludes that "[b]ased

15

upon our review of the record, Claire and Jane have made no such showing of mismanagement." Maj. Op. ¶ 24. However, for purposes of determining the issue of standing, "[t]he existence of subject-matter jurisdiction turns on the well pleaded allegations of the complaint which are taken as true." *Hobson*, 179 So. 3d at 1032 (¶ 17). Thus, for purposes of evaluating standing, we must accept Claire's petition alleging that Knox and others associated with the administration of Brenda's estate had mismanaged and misappropriated the estate and trust assets. *Flowers*, 2018 WL 718626, at *2 (¶ 7). Accepting Claire and Jane's petition as true, we proceed to the issue of whether they enjoy standing to request an accounting.

¶40. Claire and Jane's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law. *SASS Muni-V*, 170 So. 3d at 446 (¶ 13). The Court's opinion in *Baumgardner* serves as a guide to determine what type of interest Claire and Jane might have in their mother's estate. In *Baumgardner*, Veronica Arrington claimed that certain trusts created by her father Harold Baumgardner had been mismanaged by William Ready. *Baumgardner*, 82 So. 3d at 596 (¶ 1). Ready denied Arrington's request for an accounting. *Id.* The chancery court found that the trustee should not be required to render an accounting to Arrington. *Id.* On appeal, Ready argued that Arrington did not have standing to bring a claim against him, because she had no colorable interest in the trusts. *Id.* at 599 (¶ 20). Ready also argued that under the will at issue, Arrington had only a contingent remainder interest in the trust property while Emogene [(Harold's wife)] was still alive—the contingency being that the

16

trust corpus might be used to support Emogene and that the assets might have been exhausted by the time Arrington's interest vested. *Id.*

¶41.    The *Baumgardner* Court wrote,

> Although Arrington did not have a present possessory interest in the property at the time she filed suit, her remainder interest was vested. The law favors vesting of remainders, and a remainder interest will be contingent only if the testator clearly intended such. *McClelland v. Bank of Clarksdale*, 238 Miss. 557, 119 So. 2d 262, 267 (1960). "A remainder interest in an irrevocable trust represents a present fixed right to future enjoyment that gives rise to a vested property interest in trust property even if that interest is subject to complete divestment or defeasance." 76 Am. Jur. 2d *Trusts* § 252 (2005). *See also* ***Hays v. Cole***, 221 Miss. 459, 473, 73 So. 2d 258, 264 (1954) ("If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate."); *McClelland*, 119 So. 2d at 267 ("[A] gift of a life estate with remainder to a named person creates a vested remainder on the death of the testator."). Because Arrington's interest in the trust property was vested, Ready's argument that she does not have standing because her interest was contingent has no merit.

> In sum, we find that Ready's contention that Arrington did not have standing to file suit against him as trustee is without merit. Standing is determined at the commencement of the suit. ***Burley*** [***v. Douglas***], 26 So. 3d [1013,] 1020 [(Miss. 2009)]. At that time, Arrington had standing as conservator of Emogene's estate and person, and by her remainder interest in the trust property. Moreover, Ready's assertion that Arrington lacked standing because her interest in the trust property was contingent fails because Arrington had a vested remainder interest in the property.

*Baumgardner*, 82 So. 3d at 600–01 (¶¶ 27-28).

¶42.    In its writ of *certiorari*, the estate contends that the Court of Appeals' decision is erroneous, because it failed to apply the two part test announced in ***Hemphill***. *See* ***Hemphill***, 145 So. 3d at 464 (discussing that "[t]he owner of a future interest must fulfill two requirements in order to receive compensation."). I agree with Judge Tindell's dissent to the

extent that the two part test is inapplicable to the facts of the present case, which do not involve a taking. Although the two part test is inapplicable, the *Hemphill* Court's discussion of owners of executory interests is applicable, apart from the analysis specific to the constitutional issue of a taking. The *Hemphill* Court wrote that "[t]he owner of an executory interest has certain limited rights to enjoin the possessory owner from waste of the inheritance, and to recover damages for injuries which diminish substantially its value." *Hemphill*, 145 So. 2d at 461. The Court further explained

> Moreover, the owner of a future interest must have his "day in court", or its equivalent, before a claim affecting it can effectively secure judicial sanction. This rests upon the constitutional provision for due process. Hence a living owner of a future interest is generally a necessary party to any litigation affecting it. 2 Powell, Real Property, §§ 294, 295; *Russell v. Federal Land Bank*, 180 Miss. 55, 176 So. 737 (1937). *This same principle should apply to a proceeding to condemn or take property by the state.*

> These characteristics illustrate "the unique feature of the concept of the future interest in Anglo-American law." It is that 'a future interest is property which now exists.' 1 American Law of Property, § 4.1. It is distinguished from a present interest in that the privilege of possession or enjoyment is future and not present. Hence "the preferred view today is that all varieties of future interests are existing interests."

> *This doctrine of the nature of future interests is more logical and factually consistent than the old theory of estates which took into account only so-called "vested" interests.* Any interest which takes away a part of the sum total of rights, powers, privileges and immunities which go to make up a fee simple absolute is an existing interest. *Ibid.*, § 4.1.

> *Moreover, the word 'vested' is meaningless unless more precisely defined.* It is often used in at least four senses: An interest in land has become possessory or is vested in possession; it is an estate, vested in interest, rather than the possibility of becoming one; it is transmissable on death; it has acquired the degree of certainty which under the Rule against Perpetuities an interest must acquire within lives in being and 21 years or fail. Leach and Logan, Cases on Future Interests and Estate Planning (1961), pp. 253, 254.

18

In summary, the precedent and statutory history of the law of this state place an independent value and significance on future interests, whether "vested" or not. A future interest, such as the executory one owned by appellants, is property which now exists. The privilege of possession and enjoyment is future and not present, but it is an existing interest. Furthermore, Miss. Const. Sec. 17 was intended to protect all interests in property, and to prevent the state from taking the same without due compensation to the owners.

*Id.* at 461–62 (emphasis added).

¶43. The Court went on,

When a contingent remainder is limited to an existing ascertained person there is no question but that the courts will recognize the interest as having present existence. The wide acceptance of that fact makes it clear that the interest is "property" in the usual sense of the word. Whether a given future interest is of a sufficiently substantial character to be given the protection of a particular constitutional guaranty would seem properly to depend upon factors other than the classification as vested or contingent.

*Id.* at 462.

¶44. The Court applied general property principles to the constitutional issue before it in *Hemphill*. Here, the same general property principles are applicable. Under *Hemphill*, the classification of whether Claire and Jane's future interest is "vested or not" is not dispositive. *Id.* Claire and Jane enjoy a contingent remainder "interest as having present existence." *See id.* at 461.

¶45. Ultimately, under the guide of *Hemphill* and *Baumgardner*, and in light of the Court's liberal standing requirements, I would affirm the judgment of the Court of Appeals. Jane and Claire, as contingent remainder interest holders, have standing to request an accounting, because they have a colorable interest in the subject matter of whether the estate and the trust were administered faithfully. I would affirm the Court of Appeals and would

19

allow the matter to be remanded to the chancery court for further proceedings.

**KITCHENS, P.J., AND CHAMBERLIN, J., JOIN THIS OPINION.**