BEAM, JUSTICE, FOR THE COURT:
 

 ¶1. Claire Clements Flowers (Claire) and Brenda Jane Flowers Paixao (Jane) appealed the judgment of the Leflore County Chancery Court denying their request for an accounting of the estate and testamentary trust of their mother, Brenda Bargas Flowers. The chancery court concluded that the daughters did not have a current interest in their mother's estate.
 

 ¶2. On appeal, the daughters argued that they were specifically named in the will to be remainder beneficiaries and thus have standing to request an accounting. The Court of Appeals found that Claire and Jane have standing to request an accounting, finding that they have limited rights as holders of a shifting executory
 interest to prevent future waste.
 
 [1]
 

 In re Flowers v. Flowers
 
 , No. 2016-CA-00800-COA, --- So.3d ----,
 
 2018 WL 718626
 
 (Miss. Ct. App. Feb. 6, 2018).
 

 ¶3. The estate petitioned this Court for a writ of certiorari, claiming that the daughters' appeal was untimely and that the Court of Appeals misapplied caselaw related to shifting executory interests and standing to request an accounting. We granted certiorari not to determine whether the sisters have standing, because we agree that they do, but to determine whether the chancellor abused his discretion in denying the sisters' accounting request. We find no manifest error in the chancery court's decision to deny Claire and Jane's request for an accounting. Accordingly, we reverse that portion of Court of Appeals' judgment and reinstate the chancery court's decision denying Claire and Jane's request for an accounting.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶4. "Richard and Brenda Flowers married and had three children: a son, Knox Lemeé Flowers, and two daughters, Claire and Jane."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *1. "In 2004, Claire gave birth to a son, D.A.," whom Richard and Brenda adopted in 2005.
 

 Id.
 

 On April 15, 2006, Richard died.
 

 Id.
 

 On July 24, 2006, Brenda executed her last will and testament and died about a month later.
 

 Id.
 

 ¶5. "Brenda's will appointed Knox as her estate executor and provided that he 'serve without bond, inventory, appraisal[,] or accounting to any [c]ourt.' "
 

 Id.
 

 "The will also established a trust that named D.A.," who was two years old at the time, "and his descendants as the income beneficiaries."
 

 Id.
 

 "The will provided for the trust's termination either at the time of D.A.'s thirtieth birthday or his death, whichever event occurred first."
 

 Id.
 

 ¶6. "The will further stated that at the time of termination, the trust's assets were to be divided evenly between D.A. and Knox."
 

 Id.
 

 If both D.A. and Knox died "without any descendants before the trust's termination, the trust's assets were to be distributed to Claire and Jane as beneficiaries, either directly or through conservatorships."
 

 Id.
 

 Brenda's will "stated that the trustee 'shall ... account fully and completely annually, throughout the term of this [t]rust, to such income and/or corpus beneficiaries as there may be or[,] in the event such beneficiary is a minor or a ward, then to such beneficiary's guardian.' "
 

 Id.
 

 ¶7. Brenda's "will was probated in Leflore County, and Knox was appointed her estate executor."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *2. "In November 2007, the chancery court awarded custody of D.A. to his paternal grandfather and step-grandmother, Carter and Linda Lang."
 

 Id.
 

 ¶8. In February 2008, the chancellor signed an order that disposed of numerous motions filed by the parties.
 

 Id.
 

 " In doing so, the chancellor granted Claire's requests to withdraw her previously filed motion for an accounting of [Brenda's] estate and her petition for Knox's disqualification as estate executor."
 

 Id.
 

 The chancellor further ordered Knox, as executor, to take the following actions upon the closing of Brenda's estate
 

 [L]ist the household goods and personal belongings of Brenda ..., as well as
 lockbox contents[,] that came into his possession as [e]xecutor and ... state where these items are presently located, and any items converted to his personal possession or disposed of for his benefit will be noted and charged against any [e]xecutor's fee, as may be determined and approved by this [c]ourt[; and]
 

 ....
 

 [F]urnish an accounting of [Brenda's] [e]state from the date of death to the date of any final decree granting Claire ... [g]uardianship of [D.A.] due to the appeal on file at this time ... and[ ] that Claire ... is entitled to an accounting,
 
 if and when she becomes a vested remainder beneficiary of this estate from the date of such vesting until delivery of assets to her.
 

 Id.
 

 (emphasis added by Court of Appeals).
 

 ¶9. "Despite withdrawing her first motion for an accounting" in August 2015, Claire, proceeding
 
 pro se
 
 , filed a second "petition for a full accounting," alleging "that Knox and others associated with the administration of Brenda's estate had mismanaged and misappropriated estate and trust assets."
 

 Id.
 

 Claire claimed that "even though she was a remainder beneficiary of [Brenda's] will, she still [had] standing to demand an accounting."
 

 Id.
 

 ¶10. In February 2016, "Knox filed a final accounting in [Brenda's] estate and a petition to be discharged as executor."
 

 Id.
 

 at ----,
 
 2018 WL 718626
 
 , at *3. "[A]s provided in the [2008] decree, Knox prepared the estate accounting and presented it in camera to the chancellor, D.A., and D.A.'s guardians, the Langs."
 

 Id.
 

 ¶11. In March 2016, the chancery court denied Claire's August 2015 "petition for a full accounting of [Brenda's] estate and testamentary trust," acknowledging the court's prior ruling "that Claire would be entitled to an accounting 'if and when she [became] a vested remainder beneficiary' of [Brenda's] estate."
 

 Id.
 

 Claire filed a motion for reconsideration, which the chancery court denied.
 

 Id.
 

 ¶12. The Court of Appeals reversed the chancery court's order denying Claire and Jane's request for an accounting, finding that Brenda's will gave Claire and Jane a shifting executory interest in the assets of the testamentary trust.
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *4. And "[a]s holders of a shifting executory interest in their mother's estate, Claire and Jane possess limited rights to enjoin the possessory owners from future waste of the estate."
 

 Id.
 

 (citing
 
 Hemphill v. Miss. State Highway Comm'n
 
 ,
 
 245 Miss. 33
 
 ,
 
 145 So.2d 455
 
 , 457 (1962) ).
 

 ¶13. The Estate filed a motion for rehearing, which the Court of Appeals denied. The Estate then petitioned this Court for certiorari, claiming that Claire and Jane's appeal was untimely and that the Court of Appeals misapplied caselaw related to shifting executory interests and standing to request an accounting.
 

 STANDARD OF REVIEW
 

 ¶14. "This Court applies a limited standard of review on appeals from chancery court."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at 3 (citing
 
 Jackson v. Mills
 
 ,
 
 197 So.3d 430
 
 , 437 (Miss. Ct. App. 2016) (citing
 
 McNeil v. Hester
 
 ,
 
 753 So.2d 1057
 
 , 1063 (Miss. 2000) ) ). "If supported by substantial credible evidence, we leave a chancellor's factual findings undisturbed unless the chancellor applied an incorrect legal standard, was manifestly wrong, or was clearly erroneous."
 

 Id.
 

 (citing
 
 Jackson
 
 ,
 
 197 So.3d at
 
 437 ) (quoting
 
 Davidson v. Davidson
 
 ,
 
 667 So.2d 616
 
 , 620 (Miss. 1995) ; citing
 
 Ainsworth v. Ainsworth
 
 ,
 
 139 So.3d 761
 
 , 762 (Miss. Ct. App. 2014) ) ). "We review questions of law de novo."
 

 Id.
 

 (citing
 
 Jackson
 
 ,
 
 197 So.3d at
 
 437 ) (citing
 
 Lowrey v. Lowrey
 
 ,
 
 25 So.3d 274
 
 , 285 (Miss. 2009) ) ).
 

 DISCUSSION
 

 ¶15. We hold today that the chancellor, in his discretion, correctly held that under Brenda's will, Claire and Jane have so remote an interest with such a mere expectancy of a future inheritance that they are not entitled to an accounting until that interest vests. The Court of Appeals relied on
 
 Hemphill v. Mississippi State Highway Commission
 
 , but we find that it does not apply here because that case was restricted to a consideration of constitutional rights. We granted certiorari to determine whether the chancellor abused his discretion in denying Claire and Jane's accounting request. We find the denial of that request was not an abuse of discretion, and we affirm that portion of the chancellor's judgment.
 

 ¶16. Chancellors have long been vested with discretionary authority to decide matters of equity. Article 6, section 159, of the Mississippi Constitution confers on chancery courts jurisdiction of "All matters in equity ...," as well as other enumerated matters. "A court of equity is a court of conscience. The function of the chancellor is, upon equitable considerations, to winnow the wheat from the straw, and his decree will not be set aside on appeal unless, as is not the case here, it is made to appear that it is not equitable but inequitable to let it stand."
 
 Durkin v. Lovknit Mfg. Co.
 
 ,
 
 208 F.2d 665
 
 , 667 (5th Cir. 1953).
 

 ¶17. The chancellor, in reviewing the will, found that the will's terms reflected that in creating the testamentary trust, Brenda had named D.A. the income beneficiary, with the principal to be placed in trust until D.A.'s thirtieth birthday or his death, whichever occurred earlier. Upon either D.A.'s thirtieth birthday or his death, Brenda's will directed that the trust's principal be evenly divided between D.A. and Knox "per stirpes to include adopted children."
 

 ¶18. The terms of the will also discussed disbursement of trust assets to beneficiaries who were under the age of twenty-one at the time of the trust's termination or who died before the trust's termination. Finally, establishing that D.A. and Knox were to inherit subject to a condition subsequent of survivorship, the will stated as follows:
 

 If there are no surviving beneficiaries, descendants of deceased former beneficiaries, former beneficiaries who are living, or descendants of deceased former beneficiaries, then his or her interest shall be distributed share and share alike to the [c]onservatorships for my two daughters[, Claire and Jane;] should either one or both of them not have a [c]onservatorship at the termination of this trust[,] then distribute their portion outright to them.
 

 ¶19. Thus, Brenda's will established that if D.A. and Knox died
 
 without any descendants
 
 , then the remainder would be distributed to Claire and Jane; at that point, their interest would vest. If Knox and D.A. died today without any descendants, then Claire and Jane would be entitled to receive an accounting because their interest would vest. But affording Claire and Jane an accounting now, when the interest has not yet vested, would result in an inequitable, unjust burden on the court and furthermore on the estate.
 

 ¶20. This matter has been ongoing for the last ten years. The beginning traces back to D.A.'s birth in 2004 and his subsequent adoption in 2005 by his maternal grandparents, Richard and Brenda Flowers. After both of their deaths, custody disputes over D.A. ensued. After custody
 was resolved, estate disputes began. All along, both parties conceded that the will creating the trust was primarily for the benefit of D.A., and Claire and Jane fully recognized that their interest is a future interest. But they continued to disrupt, prolong, and dwindle the estate and its assets. After numerous petitions and a 616-page pleading alleging a plethora of wrongdoing by everyone involved in the case, the estate was finally nearing its closing when Claire and Jane requested yet another accounting.
 

 ¶21. Claire and Jane argue that an accounting is necessary because proof of mismanagement exists; Knox did not file annual accountings under Mississippi Code Section 91-7-277 (Rev. 2018). This Court has held, "Generally, executors and administrators are required to submit an annual accounting to the court."
 
 In re Estate of Baumgardner
 
 ,
 
 82 So.3d 592
 
 , 604-05 (Miss. 2012) (citing
 
 Miss. Code Ann. § 91-7-277
 
 (Rev. 2004) ). But the law also recognizes that a testator may waive an accounting.
 

 Id.
 

 at 605
 
 .
 

 ¶22. As
 
 Baumgardner
 
 reiterated, "It is not error for a chancellor to refuse to order an accounting when the language of the trust expressly allows the trustee to serve without rendering an accounting."
 

 Id.
 

 (citing
 
 In re Stubbs-Kelley Trust v. Wood
 
 ,
 
 573 So.2d 734
 
 , 735-36 (Miss. 1990) );
 
 see also
 

 Beck v. Robinson
 
 ,
 
 247 Miss. 264
 
 ,
 
 154 So.2d 284
 
 (1963) (finding no abuse of discretion in the chancery court's decision to uphold the wish of a testator, whose will relieved the trustee from giving bond and filing any annual or final accounting when no showing was made by the
 
 cestui que trust
 
 of waste or loss to the property).
 

 ¶23. Here, Brenda's will states that the trustee "shall ... account fully and completely annually, throughout the term of this trust, to such income and/or corpus beneficiaries as there may be or[,] in the event such beneficiary is a minor or a ward, then to such beneficiary's guardian." Neither Claire nor Jane yet fall into one of these categories-irrespective of whatever remainder interest they may have in the property. Therefore, neither is entitled to an accounting absent a showing of waste, loss, mismanagement, or fraud.
 
 Beck
 
 ,
 
 154 So.2d at
 
 288 ;
 
 Wood
 
 ,
 
 573 So.2d at
 
 736 n.2.
 

 ¶24. Based upon our review of the record, Claire and Jane have made no such showing of mismanagement. "[A]n individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law."
 
 SASS Muni-V, LLC v. DeSoto Cty.
 
 ,
 
 170 So.3d 441
 
 , 446 (Miss. 2015) (internal citations and quotation marks omitted).
 

 ¶25. While this Court recognizes the importance of accountings to prevent the mismanagement of estates, we do not find that Claire and Jane presented any proof of mismanagement to the chancellor. Further, D.A., the income beneficiary, individually or through his guardians never alleged mismanagement.
 

 ¶26. While Claire argues that damage to the corpus of the trust could affect her ability to take under the will, we find that absent evidence of mismanagement, courts are not responsible for ensuring that enough assets remain for remainder beneficiaries.
 

 ¶27. We agree with Judge Tindell's dissent: "It is said that all good things must come to an end. In this case, it is time for a bad thing to come to an end."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *7 (Tindell, J., concurring in part and dissenting in part). Accordingly, the chancellor, in his discretion, appropriately decided to end the litigation here.
 

 ¶28. "If supported by substantial credible evidence, we leave a chancellor's factual findings undisturbed unless the chancellor applied an incorrect legal standard, was manifestly wrong, or was clearly erroneous."
 
 Flowers
 
 , --- So.3d at ----,
 
 2018 WL 718626
 
 , at *3 (citing
 
 Jackson
 
 ,
 
 197 So.3d at
 
 437 ) (quoting
 
 Davidson
 
 ,
 
 667 So.2d at
 
 620 ; citing
 
 Ainsworth
 
 ,
 
 139 So.3d at
 
 762 ) ). This Court holds that chancellors have long been vested with discretionary authority to decide matters of equity, and in this particular case, equity requires a denial of Claire and Jane's accounting request for such a remote interest.
 

 CONCLUSION
 

 ¶29. Accordingly, the chancellor's ruling is affirmed. The chancellor was well within his discretionary authority to deny Claire and Jane's accounting request. To the extent the Court of Appeals held otherwise, its judgment is reversed.
 

 ¶30.
 
 THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.
 

 RANDOLPH, C.J., KING, P.J., MAXWELL AND ISHEE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND CHAMBERLIN, J. GRIFFIS, J., NOT PARTICIPATING.
 

 Judge Carlton, J., writing. Lee, C.J., Griffis, P.J., Barnes and Greenlee, JJ., concurring. Irving, P.J., concurring in part and in the result without separate opinion. Tindell, J., concurring in part and dissenting in part with separate written opinion, joined by Wilson, J. Fair and Westbrooks, JJ., not participating.